STATE OF TENNESSEE, Petitioner,

*v.*

WALTER MARK FLANAGAN, Respondent.

443 S.W.2d 25.

(*Jackson,* April Term, 1969.)

Opinion filed June 13, 1969.

GEORGE F. McCanless, Attorney General, and Robert H. Roberts, Assistant Attorney General, Nashville, for petitioner, Sam J. Catanzaro and Jewett H. Miller, Assistant District Attorneys General, Memphis, prosecuted the case in the trial court.

Jim C. Galloway and Ike R. Clinton, Memphis, for respondent.

MR. JUSTICE HUMPHREYS delivered the opinion of the Court.

Walter Mark Flanagan was convicted of third degree burglary in the Criminal Court of Shelby County, Tennessee. On appeal, the Court of Criminal Appeals considered and rejected all of defendant's assignments of error save one: that the testimony of a police officer relating that defendant, after arriving at the police station, asked and received permission to make three phone calls, and after making the third call to an attorney stated: "Well, I'm not going to tell you anything further. I don't have anything to say." The Appeals Court held this testimony was admitted in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

In a nutshell, it was held that this testimony constituted an attempt by the state to convict the defendant by his silence, by having the jury draw an inference of guilt from his refusal to talk. *Miranda,* Footnote 37, was cited as authority for this conclusion.

The State filed a petition for writ of certiorari which was granted. Defendant filed a reply under Rule 13 of the Rules of the Supreme Court of Tennessee in which he assigned error to the action of the Court of Criminal Appeals in overruling certain assignments of error.

In order to determine the correctness of the conclusion reached by the Court of Criminal Appeals, examination of the relevant portion of *Miranda* is called for:

"It is not just the subnormal or woefully ignorant who succumb to an interrogator's imprecations, whether implied or expressly stated, that the interrogation will

continue until a confession is obtained or that *silence in the face of accusation* is itself damning and will bode ill when presented to a jury.[37]

After consideration of *Miranda* and the authorities cited in Footnote 37, we think the Appeals Court misapplied the *Miranda* ruling with respect to silence in this particular case.

Manifest in the sentence as well as in the footnote itself are the words, "in the face of accusation". In the case under consideration the defendant was not subjected to any questioning. After his purely voluntary statement that he didn't have anything to say no effort was made to confront him with any accusations of guilty or any incriminating evidence.

■ The footnote sentence we think assails the situation where a defendant remains mute or asserts his right so to do when questioned about participating in criminal

---

37. "See p. 712, supra. Lord Devlin has commented:

"'It is probable that even today, when there is much less ignorance about these matters than formerly, there is still a general belief that you must answer all questions put to you by a policeman, or at least that it will be the worse for you if you do not.' Devin, The Criminal Prosecution in England 32 (1958).

"In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the *face of accusation.* Cf. *Griffin v. State of California,* 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Malloy v. Hogan,* 378 U.S. 1, 8, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 [659] (1964); Comment, 31 U.Chi.L.Rev. 556 (1964); Developments in the Law—Confessions, 79 Harv.L.Rev. 935, 1041-1044 (1966). See also *Bram v. United States,* 168 U.S. 532, 562, 18 S.Ct. 183, 184, 42 L.Ed. 568 [580] (1897)." (Emphasis supplied).

acts, a silence in the face of accusation or interrogation with respect to crime, from which an inference of guilt might be drawn.

■ Thus, this testimony is without the ambit of this part of Miranda.

*Miranda* cites *Griffin v. California,* 380 U.S. 609, 85 S.Ct. 1229 and other cases in discussing this proposition, and reference to these may be helpful in determining what the United States Supreme Court had in mind in what it said. In *Griffin* the question was whether comment by a prosecutor on the failure of a defendant to take the stand and to testify violated the Fifth Amendment, applicable to the states by operation of the Fourteenth Amendment. Griffin, who did not take the stand, was on trial for first degree murder for brutally beating a woman and leaving her in an alley. During the course of the trial the prosecutor said to the jury, after describing the gory details of the murder:

"These things he has not seen fit to take the stand and deny or explain. And in the whole world, if anybody would know, this defendant would know.

"Essie Mae (victim) is dead, she can't tell you her side of the story. The defendant won't."

■ The Court held that comment on the accused's silence or instructions by the Court that such silence was evidence of guilt is unconstitutional as violative of the Fifth Amendment. In the present case no such situation is presented. There not only was no comment or argument by the prosecutor on the defendant's statement after making his phone call, but the Court more than cured any possibility of harm by instructing the jury:

"A defendant is not required to take the stand in his own behalf, and his failure to do so cannot be considered for any purpose against him, nor can any inference be drawn from such failure of the defendant to take the stand in his own behalf in this trial."

In *Malloy v. Hogan,* which is also cited in Footnote 37 to Miranda, and which is the case that holds the Fourteenth Amendment makes the Fifth Amendment applicable to state prosecutions, was a case in which it was held the State of Connecticut could not require a witness to respond to questioning in a state gambling inquiry where the witness stated in answering the questions might tend to incriminate him. That is certainly not the case here, as defendant was not compelled to answer any questions at all, and in fact, was not even questioned after he had asserted his right to remain silent.

The third case cited in Footnote 37 is *Bram v. United States,* 168 U.S. 532, 562, 18 S.Ct. 183, 42 L.Ed. 568, 580 (1897). Bram's denial of guilt in the face of accusation by a co-suspect was introduced into evidence as a tacit admission of guilt. Defendant contended this violated the Fifth Amendment. The Court said:

"To communicate to a person suspected of the commission of crime the fact that his co-suspect has stated that he has seen him commit the offense, to make this statement to him under circumstances which call imperatively for an admission or denial * * * and then to use the denial made by the person so situated as a confession, *because of the form in which the denial is made,* is not only to compel the reply, but to produce the confusion of words supposed to be found in it, and then use statements thus brought into being for the conviction of the accused. A plainer violation as well

of the letter as of the spirit and purpose of the constitutional immunity could scarcely be conceived of." (Emphasis supplied)

The gist of Bram is that a defendant cannot be confronted by the officers with a statement charging him with guilt which *calls imperatively* for admission or denial, and then use the denial as a confession, because of the form in which the denial is made. This situation compels a reply against the defendant's right to remain mute if he wishes to do so.

■ It is noteworthy to point out that these cases and the part of *Miranda* here involved are aimed at measures taken by law officers whose effect is to compel a response from a defendant at the risk of an inference of guilt if no response is made, which is certainly not this case.

Read in context and not for the purpose of finding an excuse to release a defendant whose guilt is otherwise conclusively shown, the testimony on this point more fairly relates to the general subject of what if anything was done to advise defendant of his constitutional rights, and what was left undone with respect thereto than to defendant's guilt by inference.

In *Miranda*, 384 U.S. at page 498, 86 S.Ct. at page 1640, 16 L.Ed. at page 737, the Court said:

"We will not presume that a defendant has been effectively apprised of his rights and that his privilege against self-incrimination has been adequately safeguarded on a record that does not show that any warnings have been given or that any effective alternative has been employed."

■ This being the law, how can it be said this case must be reversed, when the effect of what the defendant

said was to prove as required by the quotation above, that, so far as he was concerned, warnings were not necessary nor was it necessary to employ an effective alternative.

There is no doubt that *Miranda* is a haven of refuge for many who commit criminal acts, but even this haven's boundaries stop somewhere, and we think that in this case they stop short of admitting this defendant into their immunity.

Defendant's assignments are overruled for the reasons set out in the Court of Appeals' opinion.

The judgment of the Court of Criminal Appeals is reversed and the judgment of the trial court is affirmed.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.