### Lloyd HARRISON, alias, Plaintiff-in-Error,

### v.

### STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

May 22, 1975.

Certiorari Denied by Supreme Court Aug. 11, 1975.

Rufus W. Beamer, Jr., and Randall E. Nichols, Knoxville, for plaintiff-in-error.

R. A. Ashley, Jr., Atty. Gen., Tom Jennings, Asst. Atty. Gen., Nashville, Ronald A. Webster, Dist. Atty. Gen., Knoxville, for defendant-in-error.

## OPINION

OLIVER, Judge.

Represented in his trial and here by two appointed attorneys of the Knoxville Bar, Harrison is now before this Court upon his appeal in the nature of a writ of error contesting his conviction of robbery, for which he was sentenced to imprisonment in the State Penitentiary for not less than five nor more than 10 years.

The defendant's first Assignment of Error assails his conviction upon the usual ground that the evidence was insufficient to warrant and support the jury verdict and preponderated against it and in favor of his innocence.

The essential substance of the prosecution evidence, obviously accredited by the jury, showed that about 11:00 p.m. on 28 July 1973 the defendant entered the Convenient Food Mart in Knoxville and bought two six-packs of beer and was checked out by a cashier; that he went to the telephone and then re-entered the check-out lane and got in the front of the line and asked for and was given some change and returned to the telephone; that while talking on the phone in a loud voice he dropped his beer and the store manager re-sacked it for him; that after finishing his telephone conversation he stood by the front door and greeted several customers as they entered and left; that he then started to walk out of the store but turned quickly and went back inside, and with his hand under his shirt, told the store manager, "Give me the money, I'm going to shoot you"; that the manager gave him the money from both cash registers, which turned out to be $364, and the defendant stuffed it into his pockets and ran out; that the manager got into his car and started looking for the defendant, spotted him "darting down" a nearby alley and returned to the store and called the police and when they arrived two or three minutes later he gave them a description of the defendant and where he last saw him running through the alley. When overtaken and captured in his flight, the defendant had $120 in bills and change in his pockets and dropped more money on the ground just before he was caught, making a total of some $360. The manager picked the defendant out of a line-up at police headquarters the following morning. Both the manager and the cashier identified him in court.

The defendant did not testify. He presented his cousin Linda Harrison and Mrs. Evelyn Brown. Linda testified the defendant visited her in her apartment about 10:30 p.m. on July 28, 1973 and that Mrs. Evelyn Brown was there at the time; that he wanted to get some beer and she and he walked to the Convenient Food Mart and he bought two six-packs of beer; that

Mrs. Brown entered the store while they were there and they conversed briefly; that she and the defendant were in the store 10 or 15 minutes and nothing unusual happened and no robbery occurred while they were there; that the defendant wanted to see her father before resuming his journey to Miami, and as she and he were walking in that direction they saw a man running in the opposite direction (toward town) on Magnolia Avenue; that a few minutes later a police car pulled alongside and one of the officers said he wanted to talk to the defendant and he handed her the sack of beer and walked over to the cruiser where he was handcuffed and taken away. Mrs. Brown corroborated Linda about being in the latter's apartment when the defendant arrived and about them leaving to go to the store. She said a short time later she decided she needed some things and drove to the store and the defendant and Linda were still there and she talked with them and they left before she did; and that nothing unusual occurred while she and they were in the store.

As the sole and exclusive judges of the credibility of the witnesses and of the weight and value to be given their testimony, *Bailey v. State* (Tenn.Cr.App.), 479 S.W.2d 829 and cases therein cited; *Gordon v. State* (Tenn.Cr.App.), 478 S.W.2d 911, very evidently the jury was unable to accord any credence to the testimony of Linda Harrison and Mrs. Brown.

Considered and tested in accordance with the well-known rules governing appellate review of the evidence in criminal cases when its sufficiency is challenged, to which we must adhere, *Webster v. State*, 1 Tenn. Cr.App. 1, 425 S.W.2d 799; *McGill v. State*, 4 Tenn.Cr.App. 710, 475 S.W.2d 223, upon this record there can be no question that the evidence presented by the prosecution fully justified and amply supports the verdict of the jury.

■ In his first Assignment the defendant also claims the trial court erroneously failed to charge the jury concerning the lesser included offenses of assault and battery, assault and larceny. This complaint was not included in his motion for a new trial. Thus, he is confronted by the settled rule that, having failed to raise these questions in his new trial motion, he is precluded from raising them here for the first time. The law of this State is that, absent any patent invalidating error, the trial judge will not be put in error upon matters not brought to his attention for correction in the motion for a new trial, and Assignments of Error which were not incorporated in the new trial motion will not be considered on appeal. *Jenkins v. State* (Tenn.Cr.App.), 509 S.W.2d 240; *Pulley v. State* (Tenn.Cr.App.), 506 S.W.2d 164; Rule 14(4) and (5) of the Tennessee Supreme Court Rules, adopted by this Court (2 Tenn. Cr.App. 746).

■ There is no merit in the defendant's third Assignment that the trial court erred in failing to grant him a continuance to secure the services of other counsel and in failing to replace his appointed counsel when his lack of confidence in them became apparent. The record shows that through the efforts of his attorneys, who were appointed 18 January 1974–75 days before the trial, the State had agreed to recommend a sentence of five years upon a plea of guilty; that after the court carefully explained his rights in the premises, the defendant stated he wanted to enter a plea of not guilty; and that he then told the court he felt like his lawyers had lost interest in his case because he decided to go to trial instead of pleading guilty, and another attorney his mother wanted to employ to represent him was engaged at the time in the trial of a case in another court. This record does not support the defendant's criticism of his attorneys. In fact, it demonstrates that their representation of him was of a very high order. The trial judge did not abuse his discretion in denying the continuance.

■ Another groundless Assignment is that the trial court erred in failing to dismiss the jury when, during voir dire exami-

nation of prospective jurors, the Assistant District Attorney General inquired whether they would consider the defendant's background in assessing punishment. The court sustained defense counsel's objection as to use of the word "background," stating that the defendant was on trial only for what was charged in the indictment. When the Assistant District Attorney General, very improperly, contested the ruling, the court stated: "Gentlemen, the jury may consider the evidence that is presented to the jury when it is presented; and if that is included within the evidence, of course, they may include it. If it is not, then it wouldn't be proper." The matter was dropped and selection of the jury was completed. Defense counsel did not move the court to dismiss the jury panel. The defendant electing not to testify, of course no evidence concerning his background or past record was introduced. This Court's opinion in *McCloudy v. State* (Tenn.Cr.App.), 513 S.W.2d 192, which involved an entirely different factual situation, is inapplicable here.

■ Nor is there any substance to the Assignment complaining that the trial court overruled the defendant's motion to suppress the store manager's testimony about identifying him at the police line-up. Following a hearing apart from the jury with reference to the conduct of the line-up, the court found that it was proper and unexceptionable in all respects and that the store manager's line-up identification of the defendant was not corrupted or tainted in any way. We agree. Although the manager had not seen the defendant prior to the robbery, he observed him while he was in the store, watched him and heard him getting change and using the telephone, rebagged his beer when he dropped it, watched him standing in the doorway greeting entering and departing customers, and squarely confronted him when he demanded and got the money. The evidence does not preponderate against the trial judge's finding with reference to the conduct of the line-up and the manager's identification of the defendant.

■ The record shows that the defendant's rights were explained to him before the line-up and he declined to sign a waiver, but two members of the University of Tennessee Law School Legal Clinic talked to him beforehand and then advised the officer he might proceed with the line-up. Notwithstanding that, the defendant now argues he was compelled to participate in the line-up without counsel in violation of the principles promulgated by the United States Supreme Court in *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149. The record shows this line-up was conducted the next morning after the robbery, hence prior to the defendant's indictment. In *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (a show-up identification immediately after arrest), the Court held that *United States v. Wade*, supra, and *Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, do not apply to pre-indictment identification proceedings. This Court has so held. *Bracken v. State* (Tenn.Cr.App.), 489 S.W.2d 261; *Russell v. State* (Tenn.Cr.App.), 489 S.W.2d 535; *Maxwell v. State* (Tenn.Cr.App.), 501 S.W.2d 577.

■ Altogether unmeritorious is the Assignment that blackboard drawings of various streets and alleys in the area of the robbed store were not drawn to scale. Nothing in the record indicates that this was in any way confusing to any witness or prejudicial to the defendant.

Finally, we turn to the defendant's Assignment that the trial court erred in overruling his motion for a mistrial when the Assistant District Attorney General elicited testimony from one of the arresting officers that he exercised his right to remain silent after being advised concerning his constitutional rights.

During his direct examination, one of the two officers who actually captured the defendant testified he was then placed in another officer's patrol car "and I read him his rights." The Assistant District Attor-

ney General then asked this officer whether the defendant made any statement at that time, and the officer replied, "He refused to make any type of statement." Defense counsel objected and moved for a mistrial, whereupon the court ruled as follows:

> "*THE COURT:* All right. The motion for a mistrial is overruled. But, ladies and gentlemen of the jury, I instruct you that the defendant or the person being apprehended at that time, the suspect, was perfectly within his rights to not make a statement. This officer has testified that he gave him his rights. A person in custody who is given his rights is not obligated to make any statements other than to say who he is. All right."

The defendant's insistence is that it was highly improper and in violation of the mandate expressed in Footnote 37 of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, for the District Attorney General to elicit from the officer that he refused to make any statement after being advised concerning his constitutional rights. *Miranda's* Footnote 37 states, in pertinent part:

> "Lord Devlin has commented:
>
> > 'It is probable that even today, when there is much less ignorance about these matters than formerly, there is still a general belief that you must answer all questions put to you by a policeman, or at least that it will be the worse for you if you do not.' Devlin, The Criminal Prosecution in England 32 (1958).
>
> "In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation."

■ Of course it was improper for the State to elicit from its witness that the defendant refused to make any statement after being advised of his constitutional rights—including the right to remain silent. *Mays v. State* (Tenn.Cr.App.), 495 S.W.2d 833; *State v. Flanagan,* 223 Tenn. 134, 443 S.W.2d 25. Manifestly, it is intolerable to penalize an accused for remaining silent or refusing to make a statement to police authorities after being advised of his constitutional right to remain silent in the face of accusation. It is elementary that a person arrested upon a charge of crime, and thus accused thereof, has an absolute and inviolable constitutional right under the Fifth Amendment, applicable to the states by operation of the Fourteenth Amendment (*Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653), to remain silent. Indeed, *Miranda* mandates, among other things, that an accused be so advised before interrogation by law enforcement officials. It would be an intolerable anomaly if an accused's exercise of his constitutional right to remain silent, of which he must be informed before any questioning by law enforcement officials concerning the offense for which he was arrested, could thus be turned against him.

But in this case, as in *Flanagan,* supra, there is no evidence that the defendant was accused or interrogated by the arresting officers. That case only involved the testimony of a police officer that, after calling his attorney the defendant stated "Well, I'm not going to tell you anything further. I don't have anything to say." The Court held that testimony was "without the ambit" of Footnote 37 of *Miranda v. Arizona,* supra, because "The footnote sentence we think assails the situation where a defendant remains mute or asserts his right so to do *when questioned about participating in criminal acts, a silence in the face of accusation or interrogation with respect to crime,* from which an inference of guilt might be drawn." (Emphasis supplied.)

The Court also held in *Flanagan* that the part of *Miranda* therein involved is "aimed at measures taken by law officers whose effect is to compel a response from a defendant at the risk of an inference of guilt

if no response is made, which is certainly not this case."

■ However, as noted, in the case before us the court specifically instructed the jury that a person in custody who has been advised of his rights is not obligated to make any statement and that the defendant was perfectly within his rights in declining to do so. Thus, in effect the court instructed the jury to disregard and give no consideration to the officer saying that the defendant refused to make a statement. Viewed in its total context, we cannot agree with the defendant that this incident so far trenched upon his constitutional rights as to nullify his trial and conviction.

Affirmed.

RUSSELL, J., concurs.

GALBREATH, Judge (concurring).

Although I did not, when this Court considered the *Miranda* issue in *Flanagan,* agree with the view later adopted by the Supreme Court as discussed by Judge Oliver, I am, of course, bound by it.