**Noah HAWKINS, Plaintiff-in-Error,**

v.

**STATE of Tennessee, Defendant-in-Error.**

Court of Criminal Appeals of Tennessee.

July 12, 1976.

James N. Ramsey, Oak Ridge, for plaintiff in error.

R. A. Ashley, Jr., Atty. Gen., Jack E. Seaman, Asst. Atty. Gen., Nashville, James B. Scott, Jr., Dist. Atty. Gen., Clinton, for defendant in error.

DAUGHTREY, Judge.

## OPINION

The defendant Noah Hawkins, together with a co-defendant Donnie Carl Roaden, was indicted for burglary, larceny, and receiving stolen property in connection with an Anderson County church break-in on March 22, 1975. Taken in the burglary were six heaters, a window fan and a wall clock, worth a total of $285.00. Prior to trial Roaden pleaded guilty to a lesser offense and was serving a penitentiary sentence at the time Hawkins was tried.

The jury found the defendant guilty of grand larceny and sentenced him to not less than three nor more than five years imprisonment. On appeal he raises five assignments of error: (1) an allegedly erroneous charge by the court on witness demeanor and credibility; (2) the court's failure to grant a motion *in limine* to exclude evidence of the defendant's past criminal record; (3) the insufficiency of the evidence to support the verdict; (4) the failure of the trial court to direct a verdict of not guilty; and (5) the refusal of the trial court to suppress certain evidence which the defendant says was illegally seized under the Fourth Amendment to the United States Constitution.

We note first of all that the alleged error in the charge to the jury was not assigned as a basis for relief in the defendant's motion for a new trial. Under well-settled law in this State, the issue cannot now be raised on appeal unless it amounts to plain error affecting the "fairness, integrity, or public reputation of judicial proceedings." *Manning v. State,* 500 S.W.2d 913 (Tenn.1973). *See also Pruitt v. State,* 3 Tenn.Cr.App. 256, 460 S.W.2d 385 (1970). Under Tennessee law the trial court will not be put in error on matters not brought to its attention for correction in the motion for a new trial. *See* Rule 14(4) and (5) of the Tennessee Supreme Court Rules as adopted by this Court, 2 Tenn. Crim.App. 746 (1967); *Harrison v. State,* 532 S.W.2d 566, 569 (Tenn.Crim.App.1975). We have looked at the instruction complained of, and we find not only the absence of "plain error" but also the absence of any error whatsoever. The assignment is untimely and without merit, and is therefore overruled.

A review of the record also shows that no error was committed by the trial court in overruling the defendant's motion *in limine.* The granting of premature motions to exclude evidence at trial addresses itself to the sound discretion of the trial judge, and we find no proof of abuse of that discretion on the record before us. Furthermore, the evidence sought to be excluded by the preliminary motion was never

the subject of testimony by the State's witnesses. The only reference to the defendant's past behavior was injected into the record by his attorney, who engaged in the following colloquy on cross-examination of the arresting officer:

Q: When you saw them, you felt they were up to no good, didn't you?

A: Yes sir.

Q: That is because you knew them, isn't it?

A: Yes sir.

All other references to the defendant's background were made outside the hearing of the jury. In the absence of any proof of prejudice to the defendant, this assignment must be overruled as being without merit.

■ The remaining assignments of error concern the sufficiency and admissibility of the evidence presented at trial. The State's proof showed that at about 2:00 A.M. on March 22 a police officer patrolling within the city limits of Clinton, Tennessee spotted the defendant's car stopped in a field some distance off the roadway. The field had been graded and packed down by developers working in the area, and the patrolling officer had been asked to check periodically on machinery parked in the field. He testified that his attention was drawn to the car when its lights were suddenly switched on. As the officer approached the car was driven out of the area at a rapid pace, "as though [the driver] was going to try to get away." The officer turned on his blue lights and quickly stopped the car. The defendant was driving; when asked for his driver's license he replied that he had none. The officer told the defendant he was under arrest for failure to have a proper license and asked him to get out of the car. The officer then shone his flashlight into the car to check the other occupants and discovered the co-defendant Roaden in the front seat, and Roaden's teenage son in the backseat along with two large heaters and a window fan. The officer asked the defendant what he had been doing in the development area and the defendant responded that he had pulled off the road to check a tire. The officer then asked where the heaters in the backseat had come from and was told that they had been retrieved from a "dumpster up the road." The officer testified that at this time his suspicions were aroused by the fact that the equipment looked too new to have been discarded. He radioed for a member of the Sheriff's Patrol, who took the defendant into custody and had the car towed in. The Sheriff's deputy had a conversation with the younger Roaden at the scene, and then took the three occupants of the car to the Sheriff's office, holding the defendant on the motor vehicle charge and the co-defendant for "investigation." As a result of the information he had gained from Roaden's son, the Sheriff's deputy went to the Hines Creek Baptist Church about 5:00 A.M. and discovered that it had been burglarized during the night.

At 9:00 A.M. that morning the Anderson County Sheriff's chief deputy advised the defendant of his *Miranda* rights and obtained a written waiver from him. A few minutes later the defendant signed a consent to search form, by which he acknowledged that he had been advised of his "constitutional right not to have a search made" of the automobile described on the consent form. The officer then went to the defendant's impounded automobile and searched it, finding two heaters and the fan in the backseat, and the remaining heaters and the wall clock in the trunk of the car.

The only defense witness at trial was the co-defendant Roaden, who testified that he was solely responsible for the burglary and theft at the church. He said that the defendant (his brother-in-law) had been drinking all day and was asleep on the backseat of the car during the commission of the crime.

We think this review of the evidence at trial clearly refutes the defendant's contentions that a verdict of not guilty should have been directed and that the evidence was not sufficient to sustain the verdict reached by the jury. The defendant has failed to carry this burden of showing on appeal that the evidence preponderates in his favor. *McBee v. State,* 213 Tenn. 15, 372 S.W.2d 173 (1963). The assignments

regarding the weight and sufficiency of the evidence are overruled.

■ We also think the defendant has failed to establish the inadmissibility of the evidence taken from his car on the date in question. We begin, as we must, with the premise that "under the Fourth and Fourteenth Amendments, that a search conducted without a warrant issued upon probable cause is '*per se* unreasonable . . . subject only to a few specifically established and well-delineated exceptions.' " *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); see also *Cady v. Dombrowski,* 413 U.S. 433, 439, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973). The seizure resulting from the warrantless search in this instance can be justified under either one of two well-recognized exceptions to the warrant requirement, and therefore we conclude that the evidence was properly admitted.

We note initially that the case before us must rise or fall on the validity of the initial stop, which of course must be justified as reasonable and proper under the Fourth and Fourteenth Amendments to the United States Constitution. *Terry v. Ohio,* 392 U.S. 1, 16–19, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Whereas under our statutes and case law a warrantless felony *arrest* must be based on probable cause, the United States Supreme Court has recognized that not every investigative contact between police officer and citizen must be supported by probable cause.

The issue was first addressed by the Court in *Terry v. Ohio, supra.* There the Court determined that a "stop," although falling short of a "full-blown arrest," is nevertheless a "seizure" of the person within the meaning of the Fourth Amendment. The Court went on to say:

. . . (I)n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion. . . . (I)n making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?

. . . Applying these principles to this case, we consider first the nature and extent of the governmental interests involved. One general interest is of course that of effective crime prevention and detection; it is this interest which underlies the recognition that a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest. It was this legitimate function Officer McFadden was discharging when he decided to approach petitioner and his companions. He had observed Terry, Chilton, and Katz go through a series of acts, each of them perhaps innocent in itself, but which taken together warranted further investigation. 392 U.S. at 21–22, 88 S.Ct. at 1880.

This "reasonable suspicion" basis for a temporary investigative stop (a "Terry stop") was upheld in *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972). There the Court said:

The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry* recognizes that it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. 407 U.S. at 145–46, 92 S.Ct. at 1923 (citations omitted).

■ The officer at the trial of this case was able to articulate the facts which caused him to make the stop: the circumstances of location, time of day, and furtive conduct by the driver of the car. We con-

clude that under these circumstances the stop was reasonable, and further that the officer's request to the defendant to produce his license as proof of identity was a reasonable investigative practice. *State v. McLennan*, 503 S.W.2d 909, 910 (Tenn.) *cert. denied*, 414 U.S. 1112, 94 S.Ct. 843, 38 L.Ed.2d 739 (1973). Indeed, we think it would have been unreasonable for the officer *not* to have investigated the situation under this set of facts.

The officer was certainly justified in making a cursory visual inspection of the defendant's companions, the other occupants of the car. In so doing, he saw several items in plain view from his vantage point outside the car. These circumstances, together with statements made by occupants of the car, were sufficient in our view to establish probable cause to believe that a crime had been committed and that the occupants of the car were involved in its commission. In addition the car was capable of being quickly moved out of the locality or jurisdiction in which any search warrant would have been sought. The existence of probable cause to search coupled with the exigent circumstance of the automobile's mobility makes this situation a valid exception to the warrant requirement of the Fourth Amendment, and thus any search of the car on the highway would have been legal. See *Carroll v. United States*, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925); *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970). In *Chambers* the United States Supreme Court held that if an automobile could have been validly searched on the street, it could later be searched after being impounded, without the necessity of a warrant. *Id.* at 52, 90 S.Ct. 1975.

■ Furthermore, in the case before us we have a written consent to search executed by the defendant prior to the actual search and seizure of which he complains. The voluntariness of the consent was not contested at trial, nor does the defendant allege on appeal that it was coerced. The

consent therefore satisfies not only the minimum standard required by *Schneckloth v. Bustamonte,* but also meets the even higher waiver standard, in that the defendant was fully informed that he could withhold consent and was given simultaneous *Miranda* warnings. See *Schneckloth v. Bustamonte, supra,* 412 U.S. at 235–46, 93 S.Ct. 2041.

The defendant alleges in his brief that his consent was invalid because it was the product of the "original warrantless search at the scene of the arrest." But we have already determined that the officer's inadvertent discovery of the stolen property in the backseat of the car, as a result of lawful conduct on his part, was not a search within the meaning of the Fourth Amendment. See *Harris v. United States,* 390 U.S. 234, 236, 91 S.Ct. 643, 28 L.Ed.2d 1 (1968); *Coolidge v. New Hampshire,* 403 U.S. 443, 465–70, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). In *Cady v. Dombrowski* the United States Supreme Court made certain observations which, while not central to its holding, we take to be highly relevant here:

> Because of the extensive regulation of motor vehicles and traffic, and also because of the frequency with which a vehicle can become disabled or involved in an accident on public highways, the extent of police-citizen contact involving automobiles will be substantially greater than police-citizen contact in a home or office. Some contacts will occur because the officer may believe the operator has violated a criminal statute, but many more will not be of that nature. Local police officers, unlike federal officers, frequently investigate vehicle accidents in which there is no claim of criminal liability and engage in what, for want of a better term, may be described as community caretaking functions, totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute. . . .
>
> The constitutional difference between searches of and seizures from houses and similar structures and from vehicles stems both from the ambulatory charac-

ter of the latter and from the fact that extensive, and often non-criminal contact with automobiles will bring local officials in "plain view" of evidence, fruits, or instrumentalities of a crime, or contraband. 413 U.S. at 441–42, 93 S.Ct. at 2528.

We conclude that the evidence taken from the backseat and trunk of the defendant's automobile was not the product of an illegal or tainted search and seizure, and therefore was fully admissible at trial. This final assignment of error is accordingly overruled.

The judgment of the trial court is affirmed.

DWYER and O'BRIEN, JJ., concur.