**William Wayne HONEYCUTT, Appellant,**

v.

**STATE of Tennessee, Appellee.**

Court of Criminal Appeals of Tennessee.

Sept. 10, 1976.

Certiorari Denied by Supreme Court Oct. 25, 1976.

William Ortwein and Robert H. Feeney, Chattanooga, for appellant.

R. A. Ashley, Jr., Atty. Gen., David L. Raybin, Asst. Atty. Gen., Nashville, Stephen M. Bevil and Thomas J. Evans, Asst. Dist. Attys. Gen., Chattanooga, for appellee.

## OPINION

DAUGHTREY, Judge.

William Wayne Honeycutt was charged with first degree murder, but was convicted by a Hamilton County jury of second degree murder and sentenced to ten years in the penitentiary. On appeal he attacks the sufficiency of the evidence to support the jury's verdict and alleges various errors occurring below which he contends entitle him to a new trial. For the reasons set out in this opinion, we disagree and we therefore affirm the judgment of the trial court.

### I.

On October 26, 1974 the defendant went with his wife to a costume Halloween party, accompanied by the victim, Charles Dunn, Dunn's wife and another couple. The defendant had been drinking moderately earlier in the evening, and he continued to imbibe at the party. Apparently he made some unwelcomed comments to one or two of the women guests, and as the evening wore on he engaged in other increasingly disorderly conduct. His behavior prompted his wife to apologize to the party's hosts, and she sought help from some of the defendant's friends in an effort to get him to the car so that she could drive him home. One of the people who came to her assistance was the victim, Charles Dunn. For a time the defendant resisted Dunn's efforts to get him outside, grabbing Dunn's tie and using loud and abusive language. Finally Dunn "put a full Nelson" on the defendant, walking him forcibly to the car which was parked in the driveway. There Mrs. Honeycutt was waiting for him, already behind the steering wheel. The defendant stood next to the open door on the passenger side of his car for some period of time talking to Dunn, who was facing him. The defendant, obviously intoxicated, became maudlin, saying repeatedly that his wife was too good for him, that he was tired of living, and that he wanted to die. The victim made apparently successful efforts to calm Honeycutt, and it appeared that the defendant was getting in the car when suddenly and inexplicably he grabbed an automatic pistol from under the floormat of the car, wheeled and fired a shot into the yard, fired three shots at the victim, pointed the pistol into the car and fired again, striking his wife in the thigh. He also aimed the gun at the head of a witness who was standing on the driver's side of the car, but the gun jammed and would not fire. This witness quickly opened the car door and pulled Mrs. Honeycutt out of the car and to safety. He was trying to get to the other side of the car to restrain the defendant at the same time Honeycutt was entering the car and sliding over to the driver's seat. As he came around the end of the car, the witness saw the victim's head beneath one wheel of the automobile and pulled Dunn's body out of the way just as the defendant backed down the driveway. Honeycutt hit another car as he did so, and then fled at a high rate of speed.

The victim had sustained two wounds to his upper chest, both of which were described by the medical expert as "instantly fatal," and a less serious wound to his leg. Mrs. Honeycutt was not seriously wounded. The next day the defendant, accompanied by his lawyer, turned himself over to police officials and also gave them the pistol he had used in the shooting.

The defendant and his wife testified, along with several character witnesses.

Honeycutt maintained that on the day of the shooting he was disturbed over recent business reverses, had become excessively intoxicated, and reached for the gun intending suicide. He and his wife attributed her wound to the accidental discharge of the pistol during a struggle between Honeycutt and Dunn for control of the gun. But Honeycutt was unable to explain how Dunn had gotten shot, saying that his vision and hearing became "blurred" at the time the shots were fired. He testified that he fled because he intended to get off by himself and commit suicide, and that he failed in this effort because the pistol had jammed and was no longer functional.

■ We think the evidence adequately supports the verdict. The defendant's behavior was indeed puzzling, given the fact that there was no history of trouble between Honeycutt and Dunn. But while the record shows no proof of premeditation and the jury apparently thought there was sufficient proof of drunkenness to negate the intent necessary to support a first degree murder conviction, there was also no evidence of any provocation which legally could have reduced the degree of homicide to voluntary manslaughter. The jury weighed the defendant's contention that the shooting was somehow accidental or unintentional and rejected his version of the facts, as is their prerogative. We cannot say the evidence preponderates against their verdict, and the assignment of error going to the sufficiency of the evidence is therefore overruled.

## II.

■ The defendant complains further of certain procedural and evidentiary errors which allegedly occurred at his trial. He assigns as error, for example, the court's refusal to permit certain hypothetical questions which were put to the medical expert out of the jury's hearing to be repeated before the jury. The judge did so after determining that not all the material facts necessary to support the requested expert opinion had been included in the question, and also that the issue as framed in the proposed hypothetical could be determined by the jurors themselves and thus was not appropriately the subject of an expert's opinion. A review of the record indicates that the trial court was entirely correct in this ruling. Furthermore, the hypothetical question was asked out of order, so that not all the foundational facts were yet in the record, although defense counsel assured the court that they would later be made to appear. Nevertheless, this procedure effectively deprived the prosecutor of any meaningful cross-examination of the expert on this issue. Moreover, the question as posed required not only medical but also ballistical expertise and the witness had not been qualified as an expert in the latter field. Thus the proffered question was objectionable on several bases, see generally McCormick, *Evidence* §§ 13–14 (2d ed. 1972), and the trial judge did not abuse his discretion in refusing to allow it.

■ Next the defendant complains that the court erred in denying him the right to inspect copies of the pretrial statements of prosecution witnesses immediately following their direct testimony at trial. He claims that this right arises under 18 U.S.C. § 3500 and a case styled *Hudgins v. State*. No citation is given for the *Hudgins* decision, and the statute relied on applies only to federal cases. Although the Tennessee legislature has now adopted a version of the so-called "Jencks Act," Public Acts 1976, ch. 628, the new state statute was not in effect at the time this case was tried. The assignment is therefore overruled.

■ The defendant also complains that he was prevented by the trial court from presenting unspecified evidence in rebuttal of the testimony by several of the State witnesses that they had not been instructed to refuse to talk to defense investigators. The trial judge correctly ruled that this proof would have constituted extrinsic evidence of a collateral matter and that it therefore was not admissible for impeach-

ment purposes. See McCormick, *Evidence* § 47 (2d ed. 1972). This assignment of error is likewise overruled.

### III.

Finally, the defendant alleges that the trial court committed several constitutional violations which entitle him to a new trial. He complains initially of the court's order overruling his plea in abatement, which attacked the validity of the indictment on the grounds that (1) the occupational exemptions allowed under T.C.A. § 22–103 purportedly produced a non-representative grand jury, and (2) the requirement under T.C.A. § 40–1507 that the grand jury foreman be male is facially unconstitutional.

T.C.A. § 22–103 exempts from jury service "(a)ll persons holding office under the laws of the United States, or of this state; all employees of the railway mail service; all practicing attorneys, physicians, and clergymen; all acting professors or teachers of any college, school, or institution of learning; all members of fire companies; all persons over sixty-five (65) years of age, disabled by bodily infirmity, or specially exempted by any other positive law; all pharmacists registered under and in accordance with the laws of the state." By his plea in abatement the defendant specifically complained that the effect of the statute is to produce an unrepresentative jury because it exempts 15,180 persons from the total Hamilton County population of 179,-379.[1] Included in the defendant's calculation are 5,238 federal employees and 4,761 T.V.A. employees.

The United States Supreme Court has recently spoken on the long-recognized requirement under the Sixth Amendment to the United States Constitution that a jury must be representative of a cross-section of the community. *Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975). In holding that the State could not constitutionally exempt women from jury service, because to do so would result in a nonrepre-

sentative jury, the Court treated the question of occupational exemptions by way of dictum:

> The States are free to grant exemptions from jury service to individuals in case of special hardship or incapacity and to those engaged in particular occupations the uninterrupted performance of which is critical to the community's welfare. *Rawlins v. Georgia,* 201 U.S. 638, 26 S.Ct. 560, 50 L.Ed. 899 (1906). It would not appear that such exemptions would pose substantial threats that the remaining pool of jurors would not be representative of the community. 419 U.S. at 534, 95 S.Ct. at 700.

We think the defendant's contention is fallacious for two reasons. First, it does not follow that federal employees are legally exempt under T.C.A. § 22–103, *i. e.,* federal employees cannot necessarily be equated with federal "office holders." Second, and even assuming arguendo that such persons are exempt under the statute, the defendant has failed to demonstrate that as a result cognizable groups have been excluded from service, thereby making the panels unrepresentative for purposes of the Sixth and Fourteenth Amendments. See, e. g., *Strauder v. West Virginia,* 100 U.S. 303, 25 L.Ed. 664 (1872) (race); *Hernandez v. Texas,* 347 U.S. 475, 74 S.Ct. 667, 98 L.Ed. 866 (1954) (national origin); *Labat v. Bennett,* 365 F.2d 698 (5th Cir. 1966), cert. denied 386 U.S. 991, 87 S.Ct. 1303, 18 L.Ed.2d 334 (1967) (economic status); *Taylor v. Louisiana,* supra (sex). We therefore conclude that this portion of the plea in abatement was without merit and was correctly overruled by the trial court.

Regarding the contention that T.C.A. § 40–1507 creates a constitutionally impermissible classification based on sex, we think this otherwise questionable statute is saved by the language in T.C.A. § 1–304 which provides that "words importing the masculine gender include the feminine and neuter." Thus T.C.A. § 40–1507 would

---

1. These figures were submitted by stipulation upon oral argument on the pleading.

not *per se* prevent a woman from serving as the Hamilton County grand jury foreman, and in the absence of some proof that women have been systematically excluded from that office by the operation of the statute, we find no merit in the defendant's position on this point. The assignment of error relating to the trial court's failure to abate the indictment is therefore overruled.

■ Next the defendant alleges that the jury instruction given by the trial court concerning determination of the degree of homicide and the "presumption" of malice arising from the use of a deadly weapon violates the principle laid down in *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975). We have examined the court's charge and have found it to be in all respects similar to the instruction in *Armes v. State,* 540 S.W.2d 279 (Tenn.Cr.App. 1976). For the reasons expressed in that very able opinion by Judge Duncan, we find no error in the instruction given by the trial judge in this case.

■ By another error assigned in regard to the jury instruction, the defendant contends that the court in charging the jury on voluntary intoxication made an improper comment on the evidence, in violation of Article 6, Section 9 of the Tennessee Constitution. We have examined the jury charge and do not find this to be the case. The assignment is therefore overruled.

Lastly, the defendant complains of the trial court's failure to declare a mistrial after the State had elicited from a police witness the fact of the defendant's silence at the time he surrendered himself to police custody. The record shows the following exchange:

PROSECUTOR: Detective Davis, did you advise the defendant of his rights at that time?

WITNESS: Yes, sir, I did.

PROSECUTOR: Did you place him under arrest?

WITNESS: Yes, sir, I did.

PROSECUTOR: What if anything did he say to you, or did he make any statements to you about what had happened?

WITNESS: No, sir, he didn't.

Out of the jury's presence the trial judge overruled the motion for a mistrial made by the defendant immediately following this colloquy. However, the court found the question and its response to constitute an improper comment on the defendant's constitutional right to remain silent and therefore "utterly prohibited" by law. While declining to declare a mistrial he did instruct the jury to disregard the question and the answer.

■ We agree that the prosecutor's question and the elicited response were improper under Tennessee law. *O'Brien v. State,* 221 Tenn. 346, 426 S.W.2d 507, 508 (1968); *Mays v. State,* 495 S.W.2d 833, 836 (Tenn.Cr.App.1972); *Sadler v. State,* 534 S.W.2d 129, 131 (Tenn.Cr.App.1975). Cf. *State v. Flanagan,* 223 Tenn. 134, 443 S.W.2d 25 (1969). The United States Supreme Court and our state Supreme Court have also recently spoken on the related issue of using the defendant's post-arrest silence for impeachment purposes, ruling that the practice is improper in light of the required warning given the defendant under *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 264 (1966), that he has a right to remain silent. *United States v. Hale,* 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975); *Doyle v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976); *Braden v. State,* 534 S.W.2d 657 (Tenn. 1976). But in view of the trial court's contemporaneous instruction to the jury and under the circumstances of this case, we think the error here was harmless.

■ The information concerning the defendant's silence came during testimony describing the circumstances surrounding his self-surrender in the company of his attorney, and also his surrender of what turned out to be the murder weapon. There is no necessary implication that the State elicited the information in order to leave an inference of the defendant's guilt, nor does it appear from the context that the jury

would necessarily have drawn such an inference. The evidence concerning the absence of any statement by the defendant at the time of his surrender must be weighed against the other, properly admitted evidence in order to determine its prejudicial effect on the minds of the jury. We think under all the circumstances any unfavorable effect would have been minimal, given the other overwhelming evidence tending to establish the defendant's guilt. Compare *Doyle v. Ohio*, supra, 426 U.S. at 618, 96 S.Ct. at 2245; *Sadler v. State*, supra, at 131. It certainly cannot be said to have affected the outcome of the trial. See T.C.A. § 27–117. We are therefore satisfied beyond a reasonable doubt that the error committed by the prosecutor was harmless under the facts of this case. It follows that the trial judge did not abuse his discretion in refusing to grant a mistrial and that the defendant's assignment of error in this regard must be overruled.

Finding no error requiring reversal, we affirm the judgment of the trial court.

DWYER and O'BRIEN, JJ., concur.