IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
February 20, 2001

## STATE OF TENNESSEE v. CHRISTOPHER LAMONT KELSO

**Appeal from the Criminal Court for Monroe County**
**No. 99-062     Carroll L. Ross, Judge**

---

**No. E2000-01602-CCA-R3-CD**
**June 18, 2001**

---

The grand jury for Monroe County charged the defendant with one count of possession of cocaine with intent to resell and one count of felony evading arrest. The defendant went to trial, and the jury acquitted him of the narcotics offense but found him guilty of Class D evading arrest. The trial court sentenced the defendant as a Range II, multiple offender, to five years incarceration in the Department of Correction. In this direct appeal, the defendant challenges the sufficiency of the convicting evidence, the state's misuse of his post-arrest silence, the flight instruction given to the jury, and his classification as a Range II offender. Unpersuaded by the defendant's contentions, we affirm the trial court's judgment and sentence.

**Tenn. R. App. P. 3; Judgment of the Criminal Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which DAVID H. WELLES and JOHN EVERETT WILLIAMS, JJ., joined.

Steve McEwen, Mountain City, Tennessee (on appeal); Charles M. Corn, District Public Defender; and William C. Donaldson, Assistant Public Defender (at trial and on appeal), for the Appellant, Christopher Lamont Kelso.

Paul G. Summers, Attorney General and Reporter; Clinton J. Morgan, Nashville, Tennessee; Jerry N. Estes, District Attorney General; and Shari Lynn Tayloe, Assistant District Attorney General for the Appellee, State of Tennessee.

## OPINION

On March 24, 1999, Monroe County Deputy Sheriff James Kile was on assignment with Bobby Queen, an agent with the Tenth Judicial District Drug Task Force. Kile and Queen were doing drug interdiction in Bradley and Monroe Counties, and that evening they were parked in Queen's unmarked Buick on the right shoulder of the I-75 off ramp for Sweetwater, at Exit 60. Around 11:30 p.m., the defendant, Christopher Lamont Kelso, drove past Kile and Queen at a high

rate of speed. The defendant was driving his girlfriend's Chevy Cavalier, and he had four passengers with him. The defendant ignored the stop sign at the end of the exit ramp; instead he turned right on Highway 68 and speeded on towards Sweetwater.

Kile and Queen managed to catch up with the defendant on Highway 68, and they activated their emergency equipment to signal the defendant to pull over and stop. The defendant refused to comply, and two marked Sweetwater Police Department patrol cars joined the pursuit. The defendant made a sharp right hand turn off of Highway 68 onto Valley View Drive, a residential apartment complex. The defendant brought the vehicle to an abrupt stop, causing Kile and Queen to veer to the left to avoid a collision. Sweetwater Patrolman Scruggs, who had been following behind Kile and Queen, saw an object being tossed from the passenger side of the defendant's car. Patrolman Scruggs retrieved the object. It was a plastic baggie containing a golf ball sized substance. The substance later tested positive for 11.7 grams of cocaine.

After the object was ejected, the defendant's vehicle started moving again. It swerved toward Kile and Queen, proceeded a short distance before making a left hand turn into a dead-end cul-de-sac, and came to a final stop. The defendant and his passengers were ordered out of the vehicle. They were searched for weapons; none were found. Sergeant James Waltz, an officer with the Monroe County Sheriff's Department, arrived at the scene. His drug-sniffing dog alerted to the back seat of the defendant's vehicle. The two female passengers were questioned and released, but the defendant and his two male companions were arrested and taken to the Monroe County Sheriff's Department. At the jail, another canine sniff was performed on the trousers of the three suspects. The dog did not alert to the defendant's pants, whereas it did to the pants worn by the defendant's male passengers.

The defendant testified at trial. He denied buying or possessing any drugs the evening that he was arrested. He admitted, though, to speeding on the exit ramp, not stopping at the stop sign, and speeding along Highway 68. The defendant claimed that he and his friends were returning from a short trip to Chattanooga and that he was driving in a hurry to pick up his girlfriend in Knoxville.

Based on this evidence, the jury found the defendant not guilty of possession of cocaine with intent to resell but guilty of felony evading arrest. The trial court sentenced the defendant as a Range II offender to serve five years. Principally because of the defendant's extensive criminal history, the trial court declined to order alternative sentencing.

## I. Sufficiency of the Evidence

The defendant complains that the evidence was insufficient to convict him of Class D evading arrest because the state failed to prove beyond a reasonable doubt that his actions created a risk of death or injury to innocent bystanders or other third parties. He does not dispute that the proof was adequate to support a conviction for Class E felony evading arrest.

In reviewing the sufficiency of the convicting evidence, we apply a familiar standard. When an accused challenges the sufficiency of the evidence, an appellate court inspects the evidentiary landscape, including its direct and circumstantial contours, from the vantage point most agreeable to the prosecution. The reviewing court then decides whether the evidence and the inferences that flow therefrom permit any rational factfinder to conclude beyond a reasonable doubt that the defendant is guilty of the charged crime. *See Jackson v. Virginia*, 443 U.S. 307, 324, 99 S. Ct. 2781, 2791-92 (1979); Tenn. R. App. P. 13(e); *State v. Duncan*, 698 S.W.2d 63, 67 (Tenn. 1985). This rule applies to findings of guilt based on direct evidence, as well as circumstantial evidence or a combination thereof. *See State v. Dykes*, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), *overruled on other grounds by State v. Hooper*, 29 S.W.3d 1 (Tenn. 2000). On appeal, a defendant no longer enjoys the presumption of innocence; consequently, he shoulders the burden of demonstrating that the evidence is legally insufficient to support the conviction. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

In determining sufficiency of the evidence, the court does not replay and reweigh the evidence. *See State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Witness credibility, the weight and value of the evidence, and factual disputes are entrusted to the finder of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn.1978). Nor may this court substitute its inferences for those drawn by the trier of fact from the evidence. *See Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956); *Farmer v. State*, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). Rather, this court extends the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences that may be drawn from the evidence. *See Cabbage*, 571 S.W.2d at 835.

Code section 39-16-603(b) defines felony evading arrest in the following fashion:

> (1) It is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from such officer to bring the vehicle to a stop.
>
> . . .
>
> (3) A violation of subsection (b) is a Class E felony unless the flight or attempt to elude creates a risk of death or injury to innocent bystanders or other third parties, in which case a violation of subsection (b) is a Class D felony.

Tenn. Code Ann. § 39-16-603(b)(1), (b)(3) (1997).

The defendant asserts that neither the passengers in the vehicle that he was driving nor the law enforcement officers who were pursuing him qualify as "innocent bystanders" or "other

third parties." According to the defendant's argument, when these individuals are eliminated, the proof fails to establish that anyone else was endangered during the chase. We disagree.

We need not reach the question whether pursuing law enforcement officers or passengers who voluntarily accompany a driver are excluded from the categories of "innocent bystanders" and "other third parties." Deputy Kile testified that as he and Queen were pursuing the speeding car and attempting to get the defendant to stop "there were cars, oncoming traffic as we were going up 68." Also, according to Deputy Kile the chase on Highway 68 clipped along at speeds between 70 and 80 miles per hour; the defendant moreover admitted speeding on the exit ramp and on the highway. This testimony, we believe, is sufficient to establish a risk of death or injury to other motorists on Highway 68 that evening. In *State v. Garry Lee Mathes*, No. 03C01-9904-CR-00140 (Tenn. Crim. App., Knoxville, Jan. 21, 2000), the defendant was convicted of misdemeanor reckless endangerment and Class D felony evading arrest. The evidence showed that two officers chased the defendant at high speeds for seven to ten miles. During the chase the defendant and the officers "zipped past other vehicles." *Id.*, slip op. at 4. The defendant's argument that his conduct did not place any third parties within risk of death or injury was flatly rejected. The court explained,

> The testimony of the officers indicated that the Defendant passed a tractor and trailer and several cars on the interstate at very high speeds. We believe that a rational jury could find that such conduct created a risk of death or injury to those other motorists. Had the Defendant lost control of his vehicle because he was driving too fast, he could have killed or seriously injured persons in a vehicle near him. Moreover, the other motorists could have lost control of their vehicles and been killed or seriously injured due to surprise caused by the Defendant's fast speeds and the police chase.

*Id.*, slip op. at 5.

For the same reasons, we hold that the evidence in this case is legally sufficient to sustain the Class D evading arrest conviction.

## II. Post-arrest Statements

In his next issue, the defendant claims, and we agree, that the state improperly elicited testimony about his post-arrest silence. During Deputy Kile's testimony the state inquired, "Did Mr. Kelso give you any statement?" The witness began to answer, "No. Ma'am. Mr. Kelso would not speak to--" at which point the defense objected. The trial court sustained the objection and instructed the jury to disregard the question and answer. When the defendant testified, the state then asked him if he told the officers what was going on when they apprehended him. He responded that he "didn't have time to" because the officers had his face in the ground. The state followed up with asking if the defendant later told the officers, which prompted a bench conference and the state's abandonment of that line of questions.

-4-

When a defendant exercises his constitutional right to remain silent after arrest, the fact that he does so generally cannot be used against him. *See Doyle v. Ohio*, 426 U.S. 610, 96 S. Ct. 2240 (1976); *State v. Pender*, 687 S.W.2d 714, 719 (Tenn. Crim. App. 1984); *Braden v. State*, 534 S.W.2d 657 (Tenn. 1976); *Honeycutt v. State*, 544 S.W.2d 912 (Tenn. Crim. App. 1976). The state's questions in this case were clearly designed to highlight his post-arrest silence; as such they were improper.

The state, on appeal, does not defend the propriety of the offending questions. Rather, it argues that no prejudice flowed from the error. We reach the same conclusion. The defendant's post-arrest silence does not bear on the evading arrest charge. The defendant admitted that he was speeding, and he acknowledged that he did not stop when signaled to do so. The disputed issue was whether his conduct created a risk of death or injury to innocent bystanders or other third parties. The defendant's subjective intent was not relevant in that situation, and we do not see how his silence could make it more likely that innocent bystanders could have been killed or maimed that evening. On the other hand, that the defendant did not spontaneously deny knowledge of or involvement with the discarded drugs could suggest his complicity vis a vis the narcotics charge. Because, however, the jury found the defendant not guilty of the drug charge, any prejudice stemming from his post-arrest silence has been cured or, at least, rendered moot.

Under these circumstances we can confidently conclude that the state's improper questioning was harmless beyond a reasonable doubt.

### III. Improper Jury Instruction

The defendant also complains that he is entitled to a new trial because the court's jury instruction about flight as evidence of guilt was not confined to the drug possession charge. As a result, the argument goes, the jury was permitted to draw an inference of guilt based on the defendant's flight, which was the same evading arrest conduct with which he was charged.

Our review of the record reveals that the trial court and the parties were in agreement that a flight instruction should be confined to the controlled substance count of the indictment. Apparently, through oversight, the flight instruction was not limited to that count, and we are called upon to assess the prejudice, if any, that was created.

We are unpersuaded that reversible error occurred. The only disputed question concerning the evading arrest charge was whether the defendant's conduct created a risk of death or injury to innocent bystanders or other third parties. The defendant's flight, which he did not contest, was not dispositive of that question, and we fail to perceive how his defense was adversely impacted by the flight instruction.

## IV. Range II Sentencing Notice

The defendant's final complaint is that he should not have been sentenced as a Range II, multiple offender, because the state's notice of intent to seek enhanced punishment was not timely filed. There is no dispute that the state's notice was untimely. Code section 40-35-202(a) specifies in clear terms that if the state believes that the defendant should be sentenced as a multiple, persistent, or career offender, "the district attorney general shall file a statement thereof with the court and defense counsel not less than ten (10) days before trial or acceptance of a guilty plea." Tenn. Code Ann. § 40-35-202(a) (1997). The state's notice in this case was not filed until the morning of trial.

The issue becomes one of determining what remedy is available for an untimely notice. The defendant argues that the remedy is to prohibit enhanced punishment; the state asserts that the only available relief is for a defendant to move for a continuance, which the trial court is required to grant. The state's argument is based on Criminal Procedure Rule 12.3, which provides in pertinent part, that if "the notice [of enhanced punishment] is filed later than this time [ten days prior to trial], the trial judge shall grant the defendant, upon motion, a reasonable continuance of the trial." Tenn. R. Crim. P. 12.3(a).

The supreme court decided this issue in *State v. Stephenson*, 752 S.W.2d 80 (Tenn. 1988), wherein it held that the state's failure to file a timely notice of intent to seek enhanced range sentencing did not prevent the trial court from imposing sentence in an enhanced range, absent a demonstration of prejudice to the defendant from the untimely notice; furthermore, in the absence of a defense motion for continuance, any objection to the late-filed notice is waived. *See id.* at 81. The holding in *Stephenson* was reaffirmed in *State v. Adams*, 778 S.W.2d 557 (Tenn. 1990), and in *State v. Gilmore*, 823 S.W.2d 566, 570 (Tenn. Crim. App. 1991), this court declared that "the rule fashioned by the Supreme Court in *Stephenson* is equally applicable to the 1989 version of Tenn. Code Ann. § 40-35-202(a)." *Id.* at 571.

Before the trial court, the defendant repeatedly disavowed any intention to request a continuance based on the untimely notice. Moreover, on appeal the defendant does not address or explain how he was prejudiced by the late filing of the notice. "The fact that the [defendant] was sentenced within the proper range, based upon his prior convictions, does not establish prejudice." *Gilmore*, 823 S.W.2d at 570. Accordingly, we conclude that the defendant was properly sentenced as a Range II multiple offender.

For the foregoing reasons, the trial court's judgment and sentencing are affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE