Robert Andrew KEY, Appellant,

v.

STATE of Tennessee, Appellee.

Nos. 725, 750.

Court of Criminal Appeals of Tennessee, Nashville.

Aug. 16, 1979.

Permission to Appeal Denied by Supreme Court Nov. 5, 1979.

James H. Reneau, III, Celina, for appellant.

William M. Leech, Jr., Atty. Gen., Jennifer Helton Small, Asst. Atty. Gen., Nashville, Michael Coleman, Research Asst., John M. Roberts, Dist. Atty. Gen., Livingston, R. Laken Mitchell, Asst. Dist. Atty. Gen., Cookeville, for appellee.

## OPINION

O'BRIEN, Judge.

Defendant appeals from his conviction for rape and burglary in the first degree. Punishment was fixed at not less than nor more than twenty (20) years and one (1) day, and not less than nor more than five (5) years and one (1) day respectively. The very learned and comprehensive brief filed by defense counsel includes several assignments of error.

First it is insisted the indictments should have been dismissed because they were a nullity due to improper appointment of an Attorney General, pro tempore.

It appears that under the aegis of Chapter 444 of the Public Acts of 1977 the State Legislature created a second division of the Criminal Court for the Fifth Judicial Circuit. This legislation was passed on May 10, 1977 and approved by the Governor on May 16, 1977. By specific enactment it was not to become effective until July 1, 1977. The Act provided for the appointment of an attorney general to serve the new division within thirty days after the Act was signed by the Governor. The record shows that the indictment charging defendant with rape was returned by the grand jury on June 20, 1977. On the same date the judge for the Criminal Court for the Fifth Judicial Circuit issued an order appointing A. F. Officer, Jr., assistant attorney general, as Attorney General pro tempore to act and serve as Attorney General for that term of court due to the absence of Baxter Key, Jr., the duly elected Attorney General for the Fifth Judicial Circuit. General Key was attending other court matters requiring his presence out of the courtroom. It is defendant's contention that the indictment was void because it was proffered by an Attorney General pro tempore who was appointed illegally for insufficient reasons. Defendant contends that Baxter Key, Jr. was not the Attorney General on June 20, 1977 because of the appointment of John Marshall Roberts as District Attorney General for Division I of the Fifth Judicial Circuit by the Governor on May 16, 1977, and that Roberts had taken the oath of office and assumed the duties on that date.

The factual situation existing in this case does not warrant dismissal of the indictment. This is clearly elucidated in *State v. Taylor*, 199 Tenn. 507, p. 512–513, 287 S.W.2d 83, 86 (1955):

"It is settled law that the Constitution, Art. II, Sec. 8, provides that no general law shall take effect until 40 days after its passage, unless the same, or the caption shall state that the public welfare requires that it should take effect sooner. Also that the Legislature may, by the terms of the Act itself postpone its taking effect to a period beyond the 40 days. (Citation omitted).

That case also shows that a statute is duly enacted and vitalized immediately upon full compliance by the Legislature with the requirements of the Constitution for the enactment of laws, but that it

does not become effective and binding upon the citizens to comply therewith except as provided by the terms of the Act itself, or in the absence thereof, by the provisions of the Constitution."

Also see *Wright v. Cunningham,* 115 Tenn. 445, 91 S.W. 293, 295 (1905); and *State ex rel. v. Trewhitt,* 113 Tenn. 561, 572, 573, 82 S.W. 480 (1904). These cases emphasize that there is nothing in the Constitution to forbid the Legislature postponing the operation of an Act for an extended interval beyond the date of its passage.

Defendant insists there was no probable cause for his arrest and that a search of his person incident to the arrest was illegal. For these reasons a knife found in the course of the search should not have been admitted into evidence.

An out-of-jury hearing was held on a motion to suppress this evidence from admission to the jury. It was developed that the general description of her assailant given to the officers by the victim fit the description of defendant. The officers had knowledge that defendant had been accused of a similar offense just three weeks earlier. The defendant's residence was within nine-tenths of a mile of the residence of the victim. They learned from defendant's wife that he arrived at home on the night of the attack within a few minutes after it purportedly occurred. The officers were aware that a felony had been committed and had reasonable cause to believe it had been committed by the defendant. The standard for a warrantless arrest has been stated in *Jones v. State,* 161 Tenn. 370, 33 S.W.2d 59 (1930):

"The substance of these provisions is that an officer may lawfully proceed to arrest without a warrant any person when the officer has, with reasonable cause, been led to believe that the person has committed, is committing, or is about to commit a felony. It is essential to the protection of society that a wide discretion be vested in officers chosen to enforce our laws against felonies. It is impossible to define 'reasonable cause' in terms to fit all cases arising. Each case must stand on its own facts. A narrow construction would open the way for the escape of desparate (sic) criminals and the defeat of justice. One too liberal would lead to the harassment of the innocent. But the officer may not be required to wait for assurance, for evidence which would convict; when circumstances fairly point to a felony it is his duty to act, and act promptly."

It has also been stated that, "In dealing with probable cause, . . . we deal with probabilities. These are not technical; they are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Draper v. United States,* 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). See also *State v. Jefferson,* 529 S.W.2d 674 (Tenn.1975). The trial judge held that the officers had probable cause to believe that defendant had committed a felony. This finding is to be given the weight of a jury verdict and is conclusive in this Court unless we find that the evidence preponderates against that judgment. *Roach v. Moore,* 550 S.W.2d 256, (Tenn.Cr.App.1977). The evidence does not preponderate against that finding. The search of defendant was incident to a lawful arrest and necessary for the officers' protection. The knife found on his person was properly admitted into evidence. *State v. Jefferson, supra.* We overrule the assignment.

Defendant says it was error to admit into evidence a statement made by him shortly after his arrest while the officers were transporting him to the county jail. He says no proper foundation was established that he understood and knowingly waived his constitutional right against self-incrimination.

On this objection the trial judge held an out-of-jury hearing to establish the voluntariness of the admission. The officers testified that they twice advised the defendant of his constitutional right against self-incrimination and that he replied in the affirmative when asked if he clearly understood his rights. He subsequently made an admission which was reduced to writing

after he had been transported to the police station and for a third time was advised of his rights. He executed a waiver before his statement was reduced to writing. The uncontradicted evidence shows that the defendant knowingly, voluntarily and understandingly waived his rights against self-incrimination after being fully advised of those rights. We hold that the trial judge's finding was correct in this matter and the defendant has failed to show that the evidence preponderated against that finding. See *Braziel v. State,* 529 S.W.2d 501, (Tenn. Cr.App.1975). The assignment is overruled.

Defendant says the admission of the in-court identification by the victim was error because it was based upon an out-of-court identification occurring during defendant's interrogation at the Overton County Jail.

At defendant's trial the victim testified she was employed as a Ranger by the U.S. Corp. of Engineers and lived in a house trailer in a rural section of Overton County between Livingston and Celina, near the town of Allons. On the 7th of May, 1977 she had worked a twelve hour shift and had returned home at about 7:00 p.m. After engaging in some small chores about the house she watched television for a short time and went to bed at approximately 9:30 P.M. Sometime after midnight she was awakened by someone on the bed. She felt a sharp prick at her throat and she was admonished not to speak nor move or she would be killed. Not fully understanding she asked the person to repeat what he said and he responded, "Did you hear me? I said, I'll kill you." The intruder continued to ask questions and she observed that he had a folded handkerchief tied over his nose and mouth. A conversation transpired relative to the intruder's intent. He began to pull down the covers and placed his hands on her body. He advised her in very basic language of his intention to have sexual intercourse with her. This went on for some extended period of time with the defendant making several attempts at intercourse during which he threatened her with the knife by running the point of it around her neck and up and down her arm and leg. During all this time the conversation continued. At one time she persuaded him to take her to the kitchen in order to get a drink of water because she was sick to her stomach. She was able to observe him more fully with the benefit of the nightlight in the kitchen. At times his mask would slip and his face was more visible. She could see his hair and his eyes and part of his nose. She was able to describe his physical characteristics and said that he was thickly built rather than slender. Defendant made seven or eight attempts at intercourse before he succeeded. During the course of this time there was almost constant talk between them as well as ample opportunity for her to observe his features.

When defense counsel objected to her in-court identification the jury was retired from the jury room. The victim identified defendant and stated her identification was based solely on what she saw the night she was attacked. That she had enough light to observe every feature about him. She saw him in the kitchen and his face was directly in front of her for a long period of time. She recognized him immediately in the courtroom based solely on her observation on the night of the attack, although she had seen him at the jail after he was arrested.

Three days after the attack she was called to the jail. The officers had her stand outside a room with the door closed and listen to a number of people talking inside to see if she could recognize anyone's voice. Officer E. C. Hale, a TBI agent, was interrogating a second party about events which occurred at her home on the night of the assault. She immediately recognized the voice of defendant because of his peculiar manner of speech. Although there were several people talking in the room she recognized his voice among all the others. The officers then opened the door and she observed several men standing about the room. She recognized one man who was sitting down as the person who had been in her trailer. The only other person whom she knew in the room was the TBI agent who was also sitting at one side. It is defendant's complaint that under the totali-

ty of the circumstances the victim's identification of him was unnecessarily suggestive and conducive to irreparable mistaken identity. He says also he was denied his Sixth Amendment right to counsel.

The trial judge found that the rape victim made a courtroom identification based on what she saw the night of her attack. He also held that any suggestiveness at the time of the jail confrontation was not of a nature that would require the exclusion of in-court identification. We concur with the trial court's findings. Defendant obviously had characteristics of speech which enabled her to pick out his voice from among those of several unidentified men in the closed room. She was allowed to view the defendant in the presence of several other men dressed in plain clothes only one of whom was known to her. She testified that she recognized defendant by his hair, eyes, eyebrows and face. We are satisfied the evidence amply supported the trial court's finding that the in-court identification was based upon the victim's view of the rapist at the time of the crime. Moreover, while the witness testified she recognized defendant's voice among those she heard in the next room at the police station, she did not testify before the jury about any other physical identification of him at that time. A rape victim who has had an opportunity to observe her assailant, and has been in contact with him for any considerable length of time is entitled to make an in-court identification based on that observation. See *Banks v. State,* 556 S.W.2d 88, (Tenn.Cr.App.1977). *Daugherty v. State,* 478 S.W.2d 921, (Tenn.Cr.App. 1972).

The complaint about denial of right to counsel was not raised in defendant's motion for new trial and therefore is not to be considered here. *Hawkins v.*

*State,* 543 S.W.2d 606, (Tenn.Cr.App.1976). Moreover, there is no indication that any adversary judicial criminal proceedings had been initiated against defendant at the time of the identification at the jailhouse. *Moore v. Illinois,* 434 U.S. 220, 98 S.Ct. 458, 54 L.Ed.2d 424 (1977); *Kirby v. Illinois,* 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972). Defendant had repeatedly been offered the opportunity to request counsel had he chosen to do so. He declined that opportunity on at least three occasions and signed a written waiver to that effect. We overrule the assignment.

The remaining assignments pertain to the weight and legal sufficiency of the evidence. The evidence included defendant's admission as well as the positive identification of him by the rape victim based on her observations of him at the time of the crime. The proof was adequate in this case that an offense had been committed, and that defendant was guilty of the offenses for which he was indicted.

We note the judgments in this case include an adjudication of infamy, deprives defendant of the right to vote and to sit upon juries. A judgment of infamy does not carry any of the other foregoing proscriptions, and there is no statutory authority for such penalties. The judgment is modified to delete the deprivation of the right to vote or to jury service, and is otherwise affirmed.

RUSSELL and BYERS, JJ., concur.