IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
December 19, 2017 Session

## STATE OF TENNESSE v. CHARLES KEESE

**Appeal from the Criminal Court for Knox County**
**No. 105631     Scott Green, Judge**

---

### No. E2016-02020-CCA-R3-CD

---

In this appeal, the State challenges the trial court's decision to apply the amended version of Code section 39-14-105, which provides the grading of theft offenses, when calculating the defendant's sentence. The defendant asserts that the State has no right to appeal the ruling of the trial court and, in the alternative, that the trial court correctly applied the amended statute in this case. The defendant also appeals the judgment of the trial court, claiming that the evidence was insufficient to support his convictions because the State failed to adequately establish the value of the stolen property. We agree with the defendant that no appeal of right lies for the State pursuant to either Tennessee Rule of Appellate Procedure 3 or Code section 40-35-402. Because we have concluded that the trial court exceeded its authority by the application of the amended version of Code section 39-14-105 before the effective date, we could treat the improperly-filed Rule 3 appeal as a common law petition for writ of certiorari. We need not do so, however, because, pursuant to Tennessee Rule of Appellate Procedure 13, this court acquired jurisdiction of the State's claim when the defendant filed a timely notice of appeal. Following our review of the issues presented, we hold that sufficient evidence supports the defendant's conviction but that the trial court erred by applying the amended version of Code section 39-14-105. Accordingly, we affirm the defendant's conviction but vacate the six-year sentence imposed by the trial court and remand the case for the entry of a modified judgment reflecting a 12-year sentence for a Class D felony conviction of theft of property valued at $1,000 or more but less than $10,000.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed in Part; Vacated in Part; Remanded**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Courtney N. Orr, Assistant Attorney General; Charme P. Allen, District Attorney General; and TaKisha Fitzgerald, Assistant District Attorney General, for the appellant, State of Tennessee.

Brennan M. Wingerter, (on appeal); and Dustin Dunham (at trial), Knoxville, Tennessee, for the appellee, Charles Keese.

## OPINION

The Knox County Grand Jury charged the defendant with alternative counts of theft of property valued at $1,000 or more but less than $10,000 for thefts occurring on September 10 and 15, 2014; alternative counts of theft of property valued at more than $500 but less than $1,000 for thefts occurring on September 10, 2014; and alternative counts of theft of property valued at more than $500 but less than $1,000 for thefts occurring on September 15, 2014.[1]

At the June 29, 2016 trial, Brandy Beene testified that in 2014 she was romantically involved with the defendant. On September 10 of that year, Ms. Beene accompanied the defendant to the East Town Walmart, where the defendant added "several tool sets" to a shopping cart and left the store with the items despite that they had not paid for them. Ms. Beene identified herself and the defendant on the store's video surveillance recording.

According to Ms. Beene, the couple returned to the East Town Walmart on September 15, 2014, and again the defendant added "tool sets" to a shopping cart. The couple then wheeled the cart full of items into the parking lot without paying for the items. Ms. Beene again identified herself and the defendant on the store's video surveillance recording. Ms. Beene said that the defendant sold some of the tool sets "at a flea market or something like that."

Steven McCarter, who had worked as an asset protection manager at the East Town Walmart, testified that on September 10, 2014, an associate in the Lawn and Garden Department told him "that a man and woman had [gone] through the doors with a

---

[1]     Counts 1, 3, and 5 allege that the defendant "did unlawfully and knowingly obtain property" while counts 2, 4, and 6 allege that the defendant "did unlawfully and knowingly exercise control over property." *See* T.C.A. § 39-14-103 ("A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent."); *State v. Byrd*, 968 S.W.2d 290, 292 (Tenn. 1998) ("[T]heft of property may be accomplished in one of two manners: (1) taking or obtaining property without consent and with an intent to deprive; or (2) exercising control over property without consent and with the intent to deprive.").

buggy full of tools and refused to stop for a receipt check." Mr. McCarter reviewed the surveillance video, which showed the defendant and Ms. Beene entering the store at 1:00 p.m. and leaving at 1:03 p.m. Utilizing the video recording, Mr. McCarter identified the items in the shopping cart and then went to the shelves where those items should have been located. Using a piece of equipment designed to keep track of the number of items on each shelf, Mr. McCarter determined that the items he observed inside the cart had been taken from inside the store. He testified that the missing items included "two of the Bostitch Power Tool sets that are valued at 189 each, and six drills that were valued at 89.99 each." Mr. McCarter confirmed that the total value of the items he observed inside the cart exceeded $500.

Matthew Schoenrock, who had also worked as an asset protection manager at the East Town Walmart, testified that at approximately 2:10 p.m. on September 15, 2014, an associate in the Garden Center reported "that two subjects had pushed a buggy full of merchandise out of the Garden Center doors bypassing the registers, failing to pay for the merchandise." He said that when another customer approached "the subjects out at their vehicle while they were loading the merchandise into their car," the couple abandoned the shopping cart full of items. The unidentified customer returned the cart full of items to the store. Mr. Schoenrock then "rung up the merchandise and got a total for everything." He described the resultant document as "a training receipt," which was, he said, a way for the store to track what had been taken without indicating a sale.

Mr. Schoenrock identified the defendant and Ms. Beene on the surveillance video. He also identified the items taken by pointing them out inside the shopping cart. Mr. Schoenrock described the items taken as "just a bunch of hammer drills, reciprocating saws and some security devices on those saws." He said that the total value of the merchandise taken was $478.88 and that the value of the security devices was $100. He described the security devices as "[s]pider wrap . . . those black wraps that are around high priced items that go off if they're tampered with or opened." He said that Walmart had made a policy decision to set the value of "the spider wraps as $50.00 each solely because of the influx of theft that we have at our stores." He added, "Our store needs to have compensation because the spider wraps are not cheap. And the difficulty in obtaining them is even more difficult." He admitted, however, that he did not know the replacement cost of the spider wrap and that Walmart did not offer the spider wraps for sale.

Following a *Momon* colloquy, the defendant elected not to testify and chose to present no proof. Based on the proof presented at trial, the jury convicted the defendant of theft of property valued at $1,000 or more but less than $10,000 as charged in counts one and two, theft of property valued at more than $500 but less than $1,000 as charged in counts three and four, and the lesser included offense of theft of property

valued at $500 or less in counts five and six. After dismissing the jury, the trial court merged counts two through six into count one, resulting in a single conviction of theft of property valued at $1,000 or more than but less than $10,000.[2]

At sentencing, the parties agreed that the defendant, a career offender, should be sentenced at the top of the range for his class of offense. The parties did not agree, however, as to the appropriate class of offense. The trial court observed that on April 27, 2016, the governor signed into law an amendment to Code section 39-14-105 that modified the then-existing grading structure for theft offenses. Under the new law, the defendant's conviction for theft of property would be a Class E felony conviction rather than a Class D felony conviction because the value of the property established at trial was more than $1,000 but less than $2,500. *See* 2016 Pub. Acts, c. 906, § 5. The court questioned whether the terms of the savings statute included in Code section 39-11-112 would entitle the defendant to the benefit of the lesser sentence. The defendant argued that it would. The State agreed that the defendant would be entitled to the lesser sentence but only after the January 1, 2017 effective date of the amendment. The State argued that because the defendant was being sentenced before that date, the amendment had no application in his case. After taking the matter under advisement, the trial court concluded that the defendant was entitled to the benefit of the new theft grading structure despite that the act had not yet become effective and imposed a sentence of six years for the resulting Class E felony theft conviction. The judgment was entered on September 29, 2016.

The State appealed the sentencing decision of the trial court, claiming that the trial court erred by applying the amended version of Code section 39-14-105 to determine the conviction class. The defendant also appealed, challenging the sufficiency of the convicting evidence.

*I. Jurisdiction*

As in any other appeal before this court, our first concern is whether this court is authorized to hear the case. The State initiated the appeal in this case by timely filing a notice of appeal pursuant to Rule 3 of the Tennessee Rules of Appellate Procedure on October 3, 2016. That rule provides a right of appeal to the State only in limited circumstances:

> In criminal actions an appeal as of right by the [S]tate lies
> only from an order or judgment entered by a trial court from

---

[2]      "Aggregation of separate thefts is generally permissible where separate larcenous acts are: (1) from the same owner[s]; (2) from the same location; and (3) pursuant to a continuing criminal impulse or a single sustained larcenous scheme." *Byrd*, 968 S.W.2d at 291 (brackets in original).

-4-

which an appeal lies to the Supreme Court or Court of Criminal Appeals: (1) the substantive effect of which results in dismissing an indictment, information, or complaint; (2) setting aside a verdict of guilty and entering a judgment of acquittal; (3) arresting judgment; (4) granting or refusing to revoke probation; or (5) remanding a child to the juvenile court. The [S]tate may also appeal as of right from a final judgment in a habeas corpus, extradition, or post-conviction proceeding.

Tenn. R. App. P. 3(c). "When a statute affords a state or the United States the right to an appeal in a criminal proceeding, the statute will be strictly construed to apply only to the circumstances defined in the statute." *State v. Meeks*, 262 S.W.3d 710, 718 (Tenn. 2008) (citing *Carroll v. United States*, 354 U.S. 394, 400 (1957); *State v. Adler*, 92 S.W.3d 397, 400 (Tenn. 2002)). As our supreme court explained, at common law the State had no right to appeal in a criminal case under any circumstances. *Meeks*, 262 S.W.3d at 718. Later, many state legislatures and Congress granted to the prosecution limited rights of appeal via specific constitutional or statutory provisions. *See United States v. Sanges*, 144 U.S. 310, 312 (1892) ("[T]he [s]tate has no right to sue out a writ of error upon a judgment in favor of the defendant in a criminal case, except under and in accordance with express statutes, whether that judgment was rendered upon a verdict of acquittal, or upon the determination by the court of a question of law."); *see also United States v. Martin Linen Supply Co.*, 430 U.S. 564, 568 (1977); *United States v. Wilson*, 420 U.S. 332, 336 (1975). Even when the right of appeal was granted to the prosecution, courts continued to emphasize that such provisions must be construed or applied narrowly to avoid a general grant of jurisdiction for state appeals. *Meeks*, 262 S.W.3d at 718; *see also Arizona v. Manypenny*, 451 U.S. 232, 246 (1981); *State v. Reynolds*, 5 Tenn. 110, 111 (1817) ("It is our duty as faithful expositors of the law, to preserve it from all encroachment by implication or construction, for in so doing we guard the honor and the peace of our countrymen."). Indeed, "'appeals by the Government in criminal cases are something unusual, exceptional, not favored,' at least in part because they always threaten to offend the policies behind the double-jeopardy prohibition." *Will v. United States*, 389 U.S. 90, 96 (1967) (quoting *Carroll*, 354 U.S. at 400. "Both prudential and constitutional interests contributed to this tradition. The need to restrict appeals by the prosecutor reflected a prudential concern that individuals should be free from the harassment and vexation of unbounded litigation by the sovereign." *Manypenny*, 451 U.S. at 245. When construing the right of the State to appeal in a criminal case, reviewing courts must do so with an understanding that the granting authority, the legislature, "clearly contemplated . . . that [the prosecution] would be completely unable to secure review of some orders having a substantial effect on its ability to secure criminal convictions." *Will*, 389 U.S. at 98 n.5.

With these considerations in mind, we turn to the question whether any portion of the State's appeal in this case fits any of the bases for rightful appeal enunciated in Tennessee Rule of Appellate Procedure 3(c).

The trial court's ruling in this case did not have "the substantive effect of . . . dismissing an indictment, information, or complaint," did not set aside the verdict of the jury, did not arrest the judgment, did not result in the defendant's being granted probation, and did not "remand[] a child to the juvenile court." Additionally, this case does not arise from "a final judgment in a habeas corpus, extradition, or post-conviction proceeding." Because the State's claim on appeal does not fit any of the categories provided in Rule 3(c), the State has no stand-alone appeal as of right pursuant to Tennessee Rule of Appellate Procedure 3.

That being said, Code section 40-35-402 provides the State the right to appeal certain sentencing decisions of the trial court "within the same time and in the same manner as other appeals in criminal cases":

> (a) The district attorney general in a criminal case may appeal from the length, range or manner of the service of the sentence imposed by the sentencing court. The district attorney general may also appeal the imposition of concurrent sentences. In addition, the district attorney general may also appeal the amount of fines and restitution imposed by the sentencing court. An appeal pursuant to this section shall be taken within the same time and in the same manner as other appeals in criminal cases. The right of the appeal of the state is independent of the defendant's right of appeal.
>
> (b) An appeal from a sentence is limited to one (1) or more of the following conditions:
>
> (1) The court improperly sentenced the defendant to the wrong sentence range;
> (2) The court granted all or part of the sentence on probation;
> (3) The court ordered all or part of the sentences to run concurrently;
> (4) The court improperly found the defendant to be an especially mitigated offender;
> (5) The court failed to impose the fines recommended by the jury;

(6) The court failed to order the defendant to make reasonable restitution; or

(7) The sentence is inconsistent with the purposes or considerations of sentencing set out in §§ 40-35-102 and 40-35-103.

T.C.A.§ 40-35-402(a)-(b).  Construing this statutory grant of State appeal narrowly, as we are compelled to do, we conclude that Code section 40-35-402 does not provide the State a right to appeal the trial court's decision in this case.

The State argues that the trial court's erroneous application of amended Code section 39-14-105 caused it to impose a sentence within the wrong sentencing range, thus giving rise to an appeal as of right under Code section 40-35-402(b)(1).  The State's reliance on Code section 40-35-402(b)(1), however, is inapt.  The amendment to Code section 39-14-105 altered only the relationship between the value of property taken during a theft and offense classification, in some situations adjusting the class of offense at issue.  The amendment did not alter the law setting sentencing ranges.  Sentencing range and offense class are not the same.  Both offenses, *see* T.C.A. § 40-35-110, and offenders, *see id.* § 40-35-105 to -109, are classified by the legislature, and the Code then provides a range of punishment for each combination of offense and offender class.  *See id.* § 40-35-112.  "[W]hen interpreting statutes," this court follows "the Latin maxim of *expressio unius est exclusio alterius*, meaning 'the expression of one thing implies the exclusion of all things not mentioned.'"  *Adler*, 92 S.W.3d at 400 (quoting *Limbaugh v. Coffee Med. Center*, 59 S.W.3d 73, 84 (Tenn. 2001)).  The question in this case is not the appropriate range classification but whether the defendant's conviction of theft of property valued at $1,000 or more but less than $10,000 should be classified as a Class D felony, pursuant to the law in effect at the time of the crime, or a Class E felony, pursuant to amended Code section 39-14-105.  Because Code section 40-35-402 does not provide the State an appeal as of right of the trial court's decision regarding offense classification, the trial court's resolution of this question, regardless whether it was correct, does not avail the State of a statutory right to appeal under the terms of Code section 40-35-402.  Consequently, the State has no statutory right to appeal in this case.

This court may, under certain circumstances, treat an improperly-filed appeal as an extraordinary appeal pursuant to Rule 10 of the Tennessee Rules of Appellate Procedure.  *See State v. Norris*, 47 S.W.3d 457, 463 (Tenn. Crim. App. 2000); *State v. Leath*, 977 S.W.2d 132, 135 (Tenn. Crim. App. 1998).  Rule 10 provides:

An extraordinary appeal may be sought on application and in the discretion of the appellate court alone of interlocutory orders of a lower court from which an appeal lies to the

-7-

Supreme Court, Court of Appeals or Court of Criminal Appeals: (1) if the lower court has so far departed from the accepted and usual course of judicial proceedings as to require immediate review, or (2) if necessary for complete determination of the action on appeal as otherwise provided in these rules. The appellate court may issue whatever order is necessary to implement review under this rule.

Tenn. R. App. P. 10(a). Before this court will grant an extraordinary appeal, however, the appellant must establish that: (a) "the ruling of the court below represents a fundamental illegality," (b) "the ruling constitutes a failure to proceed according to the essential requirements of the law," (c) "the ruling is tantamount to the denial of either party of a day in court," (d) "the action of the trial judge was without legal authority," (e) "the action of the trial judge constituted a plain and palpable abuse of discretion," or (f) "either party has lost a right or interest that may never be recaptured." *State v. Willoughby*, 594 S.W.2d 388, 392 (Tenn. 1980) (finding that the principles required for the common law writ of certiorari are applicable to applications for extraordinary appeal under Rule 10). Application of Rule 10 in this case is inappropriate, however, because the State appeals from the final judgment of the trial court. The plain language of Rule 10 limits its application to the "interlocutory orders" of the trial court.

Under circumstances similar to those presented here, this court in *Leath* considered the State's improperly-filed Rule 3 appeal as a petition for the common-law writ of certiorari. "The common-law writ of certiorari is 'of ancient origin and has been characterized as extraordinary, remedial, revisory, supervisory, and prerogative.'" *State v. Lane*, 254 S.W.3d 349, 354 (Tenn. 2008) (quoting *State v. Johnson*, 569 S.W.2d 808, 812 (Tenn. 1978); *Tenn. Cent. R.R. v. Campbell*, 75 S.W. 1012 (Tenn. 1903)). "A writ of certiorari is an order from a superior court to an inferior tribunal to send up a complete record for review, so that the reviewing court can ascertain whether the inferior tribunal has exceeded its jurisdiction or acted illegally, fraudulently, or arbitrarily." *Lane*, 254 S.W.3d at 354 (citations omitted). An extremely limited avenue of relief, the writ of certiorari is available "to correct '(1) fundamentally illegal rulings; (2) proceedings inconsistent with essential legal requirements; (3) proceedings that effectively deny a party his or her day in court; (4) decisions beyond the lower tribunal's authority; and (5) plain and palpable abuses of discretion.'" *Lane*, 254 S.W.3d at 355 (quoting *Willis v. Tenn. Dep't Corr.*, 113 S.W.3d 706, 712 (Tenn. 2002)). The writ may also lie "'[w]here either party has lost a right or interest that may never be recaptured.'" *Lane*, 254 S.W.3d at 355 (quoting *Johnson*, 569 S.W.2d at 815)). "[R]eviewing courts should not grant a petition for a common-law writ of certiorari to '(1) inquire into the intrinsic correctness of the lower tribunal's decision, (2) reweigh the evidence, or (3) substitute their judgment for that of the lower tribunal.'" *Lane*, 254 S.W.3d at 355 (quoting *Robinson v. Clement*,

-8-

65 S.W.3d 632, 635 (Tenn. Ct. App. 2001) (internal citations omitted)).

A statutory provision for review by the writ of certiorari is codified at Tennessee Code Annotated section 27-8-101:

> The writ of certiorari may be granted whenever authorized by law, and also in all cases where an inferior tribunal, board, or officer exercising judicial functions has exceeded the jurisdiction conferred, or is acting illegally, when, in the judgment of the court, there is no other plain, speedy, or adequate remedy. This section does not apply to actions governed by the Tennessee Rules of Appellate Procedure.

T.C.A. § 27-8-101. Although a provision for a writ of certiorari has been codified, our case law is clear that "[t]he writ of certiorari does not owe its existence to constitutional provision or statutory enactment. It is a common-law writ, of ancient origin, and one of the most valuable and efficient remedies which come to us with that admirable system of jurisprudence." *Campbell*, 75 S.W. at 1012; *see also State v. L.W.*, 350 S.W.3d 911, 915 (Tenn. 2011). "The inclusion of a provision in our original constitution for writs of certiorari, Tenn. Const. art. VI, §§ 6-7 (1796), was to guarantee the availability of the writ in civil cases, as opposed to the previously exclusive use of the writ in criminal cases." *L.W.*, 350 S.W.3d at 915 (citing *Campbell*, 75 S.W. at 1012–13). Thus, the procedural requirements for filing a petition for writ of certiorari in a civil case are inapplicable "on petitions for writs of certiorari in criminal cases." *L.W.*, 350 S.W.3d at 916.

In this case, the trial court's ruling is not fundamentally illegal and does not amount to a "plain and palpable" abuse of the court's discretion. Additionally, because the trial court held more than one hearing on the issue at which both parties were allowed to fully participate, the proceedings were not "inconsistent with essential legal requirements" and did not deny either party a "day in court," and neither party "lost a right or interest that may never be recaptured." Because the trial court's application of amended Code section 39-14-105 to the defendant's case exceeded the court's authority, as will be discussed more fully below, we could treat the State's improperly-filed appeal as of right as a petition for the common law writ of certiorari. Nevertheless, we need not resort to this extraordinary avenue to consider the State's claim because the defendant filed a timely notice of appeal in this case on January 13, 2017, following the December 16, 2016 denial of his motion for new trial.

Rule 13 of the Tennessee Rules of Appellate Procedure provides:

> Except as otherwise provided in Rule 3(e), any question of
> law may be brought up for review and relief by any party.
> Cross-appeals, separate appeals, and separate applications for
> permission to appeal are not required. Dismissal of the
> original appeal shall not preclude issues raised by another
> party from being considered by an appellate court.

Tenn. R. App. P. 13(a). Once the defendant, who possessed a plenary right to appeal any
properly-preserved issue, filed a timely notice of appeal, this court acquired jurisdiction
of the entire case and any properly-preserved, cognizable claims raised by either party.[3]
*See State v. Russell*, 800 S.W.2d 169, 171 (Tenn. 1990) ("The filing of an appeal by one
party removes the entire case to the Appellate Court where both parties may present
issues in accordance with the rules."). Because our determination of the appropriate
version of Code section 39-14-105 to be applied in this case is an issue of statutory
interpretation, it qualifies as a question of law, *see State v. Henderson*, 531 S.W.3d 687,
692 (Tenn. 2017) ("Issues of statutory construction present questions of law which we
review de novo, with no presumption of correctness."), and, in consequence, it may be
raised by either party, regardless of which party initiated the appeal.

## II. Applicability of Amended Code section 39-14-105

The State contends that the trial court erred by using the terms of Code
section 39-11-112, commonly referred to as the criminal saving's statute, to determine
that the defendant was entitled to the lesser sentence provided for by the 2016
amendment to Code section 39-14-105 because (1) the amendment had not yet become
effective at the time of the defendant's sentencing hearing and (2) Code section 39-11-
112 did not apply to the amendment because it was not a sentencing provision. The
defendant asserts that the trial court did not err.

Because our determination of the propriety of the trial court's ruling
depends upon our interpretation of the amendment to Code section 39-14-105 through the
lens of Code section 39-11-112, our review is de novo with no presumption of
correctness afforded to the ruling of the trial court. *See, e.g.*, *State v. Howard*, 504
S.W.3d 260, 267 (Tenn. 2016).

The most basic principle of statutory construction is "'to ascertain and give
effect to the legislative intent without unduly restricting or expanding a statute's coverage
beyond its intended scope.'" *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 678

---

[3] As discussed above, under certain circumstances, constitutional principles limit the character of
claims that may be raised by the State on appeal.

(Tenn. 2002) (quoting *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995)). "Legislative intent is determined 'from the natural and ordinary meaning of the statutory language within the context of the entire statute without any forced or subtle construction that would extend or limit the statute's meaning.'" *Osborn v. Marr*, 127 S.W.3d 737, 740 (Tenn. 2004) (quoting *State v. Flemming*, 19 S.W.3d 195, 197 (Tenn. 2000)). "When the statutory language is clear and unambiguous, we apply the plain language in its normal and accepted use." *Boarman v. Jaynes*, 109 S.W.3d 286, 291 (Tenn. 2003) (citing *State v. Nelson*, 23 S.W.3d 270, 271 (Tenn. 2000)). "It is only when a statute is ambiguous that we may reference the broader statutory scheme, the history of the legislation, or other sources." *In re Estate of Davis*, 308 S.W.3d 832, 837 (Tenn. 2010) (citing *Parks v. Tenn. Mun. League Risk Mgmt. Pool*, 974 S.W.2d 677, 679 (Tenn. 1998)).

On April 27, 2016, the governor signed into law a bill designated by the legislature as the Public Safety Act of 2016 ("the Act"). The Act amends the law for the issuance of orders of protection; alters the penalty for a third or subsequent conviction of domestic assault; adds "the results of an offender's validated risk and needs assessment" to the list of factors that the trial court must consider during sentencing; adds a new category of offenses that come with an 85 percent release eligibility percentage; adds a new section to Title 40, Chapter 28 that creates a graduated system of sanctions for violating a sentence involving release into the community; and amends Code section 39-14-105 by modifying the grading of theft offenses. *See* 2016 Pub. Acts, c. 906. As is relevant to this case, the Act provides:

> Tennessee Code Annotated, Section 39-14-105(a), is amended by deleting the subsection in its entirety and substituting instead the following language:
>
> (a) Theft of property or services is:
>
> (1) A Class A misdemeanor if the value of the property or services obtained is one thousand dollars ($1,000) or less;
>
> (2) A Class E felony if the value of the property or services obtained is more than one thousand dollars ($1,000) but less than two thousand five hundred dollars ($2,500);
>
> (3) A Class D felony if the value of the property or services obtained is two thousand five hundred dollars ($2,500) or more but less than ten thousand dollars ($10,000);

(4) A Class C felony if the value of the property or services obtained is ten thousand dollars ($10,000) or more but less than sixty thousand dollars ($60,000);

(5) A Class B felony if the value of the property or services obtained is sixty thousand dollars ($60,000) or more but less than two hundred fifty thousand dollars ($250,000); and

(6) A Class A felony if the value of the property or services obtained is two hundred fifty thousand dollars ($250,000) or more.

2016 Pub. Acts, c. 906, § 5. The Act provides two different effective dates:

> For the purpose of promulgating rules, policies, forms, and procedures and making necessary provisions for the implementation of this act, this act shall take effect upon becoming a law, the public welfare requiring it. For all other purposes, this act shall take effect January 1, 2017, the public welfare requiring it.

*Id.*, § 17. Because the amendment to Code section 39-14-105 does not affect the "promulgating [of] rules, policies, forms, and procedures and making necessary provisions for the implementation of this act," the January 1, 2017 effective date applies to the issues raised in the present case.

"Generally, a criminal offender must be sentenced pursuant to the statute in effect at the time of the offense." *State v. Smith*, 893 S.W.2d 908, 919 (Tenn. 1994) (citing *State v. Reed*, 689 S.W.2d 190, 196 (Tenn. Crim. App. 1984); 24 C.J.S. Criminal Law, § 1462 (1989)). Code section 39-11-112, however, provides an exception to this general rule:

> When a penal statute or penal legislative act of the state is repealed or amended by a subsequent legislative act, the offense, as defined by the statute or act being repealed or amended, committed while the statute or act was in full force and effect shall be prosecuted under the act or statute in effect at the time of the commission of the offense. *Except as provided under § 40-35-117, in the event the subsequent act provides for a lesser penalty, any punishment imposed shall be in accordance with the subsequent act.*

T.C.A. § 39-11-112 (emphasis added). As our supreme court has explained, "the general provisions of § 39-11-112 and the principles against retroactive application of statutes mandate that an offense committed under a repealed or amended law shall be prosecuted under that law, unless the new law provides for a lesser penalty." *State v. Cauthern*, 967 S.W.2d 726, 747 (Tenn. 1998) (citing *State v. Smith*, 893 S.W.2d 908, 919 (Tenn. 1994); *State v. Brimmer*, 876 S.W.2d 75, 82 (Tenn. 1994)).

Against this backdrop, we must determine whether the exception embodied in the criminal saving's statute, Code section 39-11-112, applies to amended Code section 39-14-105 and whether, if it does apply, Code section 39-11-112 entitles the defendant to the lesser sentence provided by the statutory amendment even though the crime was committed and the defendant was sentenced before the effective date.

The State first argues that the exception in Code section 39-11-112 has no application in this case because Code section 39-14-105, in any form, is not a sentencing statute. We disagree. Code section 39-14-105 "provides the *punishment* for the offenses of theft. These offenses are *punished* according to the value of the property or services obtained." T.C.A. § 39-14-105, Sentencing Comm'n Comm't (emphasis added). In 1989, the legislature replaced the common law offenses of "embezzlement, false pretense, fraudulent conversion, larceny, receiving or concealing stolen property, and other similar offenses," *id.* § 39-14-101, into a "new generic offense of theft," *id.* § 39-14-101, Sentencing Comm'n Comm't; *see also id.* § 39-14-101 ("Conduct denominated as theft in this part constitutes a single offense . . . ."). Code section 39-14-103 provides the elements of the generic theft offense: "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." *Id.* § 39-14-103(a). Property is defined as "anything of value, including, but not limited to, money, real estate, tangible or intangible personal property, including anything severed from land, library material, contract rights, choses-in-action, interests in or claims to wealth, credit, admission or transportation tickets, captured or domestic animals, food and drink, electric or other power." *Id.* § 39-11-106. In most theft cases,

"Value":

(A) Subject to the additional criteria of subdivisions (a)(36)(B)-(D), "value" under this title means:

(i) The fair market value of the property or service at the time and place of the offense; or

-13-

(ii) If the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense;

. . . .

(C) If property or service has value that cannot be ascertained by the criteria set forth in subdivisions (a)(36)(A) and (B), the property or service is deemed to have a value of less than fifty dollars ($50.00);

*Id.* § 39-11-106(36)(A),(C). By applying these statutes, we see that so long as the State establishes that the defendant deprived the owner of "property," it will necessarily have established that the defendant took a thing of value and vice versa. "Nothing in [Code section] § 39-14-103 which defines the offense of theft requires the [S]tate to prove the specific value of the property taken. Rather, the [S]tate merely has to introduce evidence from which a jury could conclude that the property has some value." *State v. Hill*, 856 S.W.2d 155, 156 (Tenn. Crim. App. 1993) (*Baldwin v. State*, 33 Tenn. (1 Sneed) 411 (1853)); *see also State v. Charles Cox*, No. W2010-00129-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App., Jackson, Dec. 13, 2010) ("While the [S]tate did not present evidence regarding the value of the items, the jury was free to infer that the items had some value, which is sufficient to sustain the misdemeanor theft of property conviction.").

When the State establishes a specific value of property taken, Code section 39-14-105 supplies a *penalty* to be imposed that is commensurate with the value as established by the evidence. When the State fails, or elects not, to present proof of specific value, the Code provides a default value of less than $50. Consequently, the specific value of the property taken is not an element of the generic theft offense.[4]

Because Code section 39-14-105 provides the penalty for theft based upon the value of the property taken, any amendment to that statute that lessens the penalty falls squarely within the "exception" to Code section 39-11-112. The amendment at issue in this case does exactly that. As is applicable in this case, the amendment provides that

---

[4]     We also observe that the gravamen of the Public Safety Act of 2016 is the amendment of various sentencing provisions and that the legislature identifies the subject of HB2576, which became the Public Safety Act of 2016, as "sentencing." *See* Tennessee House Journal, 2016 Reg. Sess. No. 33 ("*House Bill No. 2576 -- Sentencing - As introduced, enacts the 'Public Safety Act of 2016.' - Amends TCA Title 36, Chapter 3, Part 6; Title 39, Chapter 13, Part 1; Title 39, Chapter 14, Part 1; Title 40, Chapter 28; Title 40, Chapter 35 and Title 41, Chapter 1, Part 4. by *McCormick, *Brooks K, * Lamberth.").

the theft of property valued at just over $1,000, the value as alleged by the State, became a Class E felony rather than a Class D felony. Clearly, the new act provides for a lesser penalty than the previous act.

Having determined that Code section 39-11-112 is generally applicable to amended Code section 39-14-105, we must next determine whether the Act can be applied in the defendant's case even though he was sentenced before the effective date of the Act. The State argues that it cannot. The defendant, of course, contends that it can. We agree with the State.

Our State constitution provides that "[n]o law of a general nature shall take effect until forty days after its passage unless the same or the caption thereof shall state that the public welfare requires that it should take effect sooner." Tenn. Const. art. II, § 20. The law is clear, however, "that the Legislature may, by the terms of the act itself, postpone its taking effect to a period beyond the 40 days even." *Wright v. Cunningham*, 91 S.W. 293, 295 (Tenn. 1905) (citing *State ex rel. v. Trewhitt*, 82 S.W. 480, 483 (Tenn. 1904)). As our supreme court explained in *Trewhitt*, the purpose behind the 40-day provision in article II, section 20 "was to secure a sufficient interval between the date of the passage of an act and its going into effect, to enable the public to become acquainted with its terms and to conform thereto with the saving that, if the public should require it, the Legislature, by special direction to that effect, might cause it to become operative at once." *Trewhitt*, 82 S.W. at 483; *Cf. Dyer v. State*, 19 Tenn. 237, 255-56 (1838) (observing that the requirement that "[s]tatutes take effect upon the most remote and secluded portions of the State, from the time of their passage, not allowing a single moment for gaining intelligence of their passage" was "a principle of law destitute of every semblance of reason, and fraught with hardship and severity."). Given this purpose, the high court observed that "[t]here is nothing in the provision referred to, or in any other provision of the Constitution, to forbid the Legislature making even a longer interval than the one that was specially designated as a safeguard." *Trewhitt*, 82 S.W. at 483.

In *Wright v. Cunningham*, our supreme court explained the effect of the legislature's including a delayed effective date:

> In such cases the instrument has, by the authority of the Legislature, become an expression of the legislative will in the form of a rule of action prescribed for the regulation of the conduct and affairs of the people; but *it is a part of the same expression that the people shall not be compelled or permitted to act thereunder until the expiration of a time fixed*. It is tantamount to saying that on and after so many

days from the passage of this act the rule of action shall be thus and thus. The statute is vitalized immediately upon full compliance by the Legislature with the requirements of the Constitution for the enacting of laws. This is one thing. *The time when it shall be the duty of the people to comply with its provisions is another; the latter depending upon the terms of the act itself.*

*Wright*, 91 S.W. at 295 (emphasis added); *see also Key v. State*, 591 S.W.2d 793, 795 (Tenn. Crim. App. 1979) (observing that "there is nothing in the Constitution to forbid the Legislature postponing the operation of an Act for an extended interval beyond the date of its passage"). In addition to a general postponing of the effective date, the legislature may, as it did in the case of the Public Safety Act of 2016, "provide that part or parts of an Act take effect before the remainder of the Act." *State ex rel. Banks v. Taylor*, 287 S.W.2d 83, 86 (Tenn. 1955); *Am. Network Grp., Inc. v. Kostyk*, 804 S.W.2d 447, 450 (Tenn. Ct. App. 1990) ("The delayed effective date is not an expression of intent that any part of the act should take effect prior to its expressly stated effective date.").

Citing *Combustion Engineering, Inc. v. Jackson*, and *Diana Morris v. State*, the defendant insists that "[a] legislative act of 'amendment' is distinct from a statutory 'effective' date." In our view, neither case supports the defendant's position. In *Combustion*, "the single issue presented [was] the proper rate of interest payable upon a deficiency assessment of excise taxes," which required the court of appeals to interpret the various amendments to Code section 67-1-801(a)(2). *Combustion Eng'g, Inc. v. Jackson*, 705 S.W.2d 655, 655 (Tenn. 1986). In *Diana Morris*, an unpublished case from the court of appeals, the court discussed the impact of an effective date that predates the passage of an act:

The General Assembly may determine an Act's effective date. However, an effective date provision stating that an Act becomes effective before it is actually passed is a nullity. A bill is not deemed enacted until all the actions required by Tenn. Const. art. II, § 18 have occurred. The 1999 amendment provided that it would apply to "all cases filed with the . . . Commission on or after July 1, 1992, pending or on appeal at the time of passage of this act . . . ." The General Assembly completed action on the bill on March 22, 1999, but the bill could not take effect until April 7, 1999, when the Governor signed it. Accordingly, we construe the 1999 amendment to apply to cases pending or on appeal when the

-16-

amendment became effective.

*Diana Morris v. State*, No. M1999-02714-COA-RM-CV, slip op. at 5 n.10 (Tenn. Ct. App., Nashville, Oct. 8, 2002).  Nothing in either case suggests that any act of the legislature can have any effect before its effective date.

In this case, the Public Safety Act of 2016 was passed by both houses of the legislature and signed into law by the governor on April 27, 2016.  *See* 2016 Pub. Acts 906.  At that point, having fully complied "with the requirements of the Constitution for the enacting of laws," the act was "vitalized."  *Wright*, 91 S.W. at 295.  Because, as is relevant in this case, the Act specified an effective date of January 1, 2017, "the people" could "not be compelled or permitted to act thereunder until" that date based upon "the terms of the act itself."  *Id.*  Nothing in the language of Code section 39-11-112 alters the rule that an act of the legislature cannot be applied until the effective date, which is anchored in the state constitution.  In consequence, the trial court exceeded its authority by applying amended Code section 39-14-105 before its effective date.

We pause here to emphasize that, although we have rejected what we discern as an over-extension of Code section 39-11-112, the statute remains naturally efficacious and viable within its proper realm.  To understand the statute's limited availability, one must understand first that the fundamental date for defining and sanctioning criminal activity is the *date of the offense*.  The date of the offense typically informs the application of the proper proscriptive and punishment statutes.  Because this is true, not even the date of sentencing supplants the date of the offense as the controlling date for purposes of criminal sanctioning – *but for exception in Code section 39-11-112, the criminal saving's statute*.  Seen in this light, it is clear that the saving's statute becomes remedial only when the sentencing occurs after the effective date of any statutory change.  In the present case, the conviction offense was committed before the effective date of the amendment to Code section 39-14-105 (and, in actuality, before the governor signed the amendment into law), and the sentencing occurred before the effective date of the statute.  Thus, not even the date of the sentencing supplanted the date of the offenses as the controlling date in this case.

Therefore, we vacate the sentence.  Because the parties agreed that the defendant was a career offender, a remand for resentencing is not necessary.  The judgment is modified to reflect a Class D felony conviction of theft of property valued at $1,000 or more but less than $10,000 and a sentence of 12 years.  *See* T.C.A. § 40-35-108(c) ("A defendant who is found by the court beyond a reasonable doubt to be a career offender shall receive the maximum sentence within the applicable Range III."); *id.* § 40-35-112(c)(4) ("A Range III sentence is . . . [f]or a Class D felony, not less than eight (8) nor more than twelve (12) years[.]").

*III. Sufficiency*

The defendant challenges the sufficiency of the convicting evidence, claiming that the State failed to establish that the value of the property taken exceeded $1,000. Specifically, the defendant asserts that Mr. McCarter failed to give specific testimony regarding the items taken during the September 10 incident before concluding in a general manner that the value of the items exceeded $500 and that Mr. Schoenrock erroneously included a value of $100 for the two spiderwraps to reach the $500 threshhold in relation to the September 15 incident despite testifying that that was neither the fair market value nor the replacement cost for those items. The State asserts that the evidence was sufficient.

As is relevant in this case, value means either "[t]he fair market value of the property or service at the time and place of the offense" or "[i]f the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense." T.C.A. § 39-11-106(a)(36)(A)(i)-(ii). Mr. Schoenrock, who provided the value of the items taken from the Walmart on September 15, candidly admitted that he did not know whether the $100 value he assigned to the spiderwraps was either the fair market value or the replacement cost for those items. He acknowledged that he did not know the replacement cost because it was not his job to order them and that Walmart did not offer the spiderwraps for sale such that their fair market value could be ascertained by checking the price in the store. That being said, the defendant was convicted of the lesser included offense of theft of property valued at $500 or less in those counts, and the "training receipt" created by scanning the items in the defendant's shopping cart supported that conviction even without the $100 attributed to the security devices. Mr. McCarter identified the items taken by the defendant from the Walmart on September 10 as Bostitch tool sets, two of which were priced at $189.99 and six of which were priced at $89.99. Although Mr. McCarter did not prepare a "training receipt" and his testimony was, at times, less than specific, the aggregate total of the items he identified in the defendant's shopping cart exceeded $900. Thus, the evidence adduced at trial was sufficient to support a conviction of theft of property valued at more than $500 in counts three and four. Additionally, the evidence sufficiently established that the aggregate value of the items taken during the two incidents was $1,000 or more but less than $10,000 as alleged in counts one and two.

*Conclusion*

The evidence was sufficient to support the defendant's convictions in this case. Because the trial court erred by applying the amended version of Code section 39-14-105 prior to the amendment's effective date, we vacate the six-year sentence imposed

by the trial court and remand the case for the entry of a modified judgment reflecting a 12-year sentence for a Class D felony conviction of theft of property valued at $1,000 or more but less than $10,000.

_____
JAMES CURWOOD WITT, JR., JUDGE